UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————

D.S., an infant, by and through her parent
and natural guardian, C.S., and C.S.,
individually, on her own behalf,

                Plaintiffs,

      v.

ROCHESTER CITY SCHOOL DISTRICT,
et al.,

                Defendants.

—————————————————————

**DECISION AND ORDER**

6:19-CV-6528 EAW

## <u>INTRODUCTION</u>

Plaintiffs D.S. and C.S. (collectively "Plaintiffs") bring this action against defendants Rochester City School District ("RCSD"), the Board of Education of the RCSD, Barbara Dean-Williams, Karl Kristoff, Fatimat Reid, Sheelarani Webster, Charles Smith, Kim Garlock, Amy Martin, Nancy Resto, Shelly Boyd, Jessica Flanders, Elizabeth Caveny, Nicole McCoy, Megan Carlett, Valerie Tarragrossa,[1] Yolanda Wade, Idonia Owens, Erica Deming, and two John Doe Defendants (collectively "Defendants"), alleging violations of Title VI, Title IX, and 42 U.S.C. § 1983, First Amendment

---

[1]     In her Answer, Defendant Tarragrossa indicates that her last name is misspelled in Plaintiffs' complaint and is actually spelled Torregrossa. (Dkt. 13 at 1). For purposes of this Decision, the Court will use the spelling indicated in the complaint, but if Plaintiffs amend their complaint, they should correct this deficiency.

retaliation, municipal liability for failure to train and supervise, negligent supervision, and equal protection.  (Dkt. 1).

Pending before the Court is a motion to dismiss Plaintiffs' complaint filed by Defendants RCSD, the Board of Education of the RCSD, Barbara Dean-Williams, Karl Kristoff, Fatimat Reid, Sheelarani Webster, Charles Smith, Kim Garlock, Amy Martin, Nancy Resto, Shelly Boyd, Jessica Flanders, Elizabeth Caveny, Nicole McCoy, Megan Carlett, Yolanda Wade, Idonia Owens, and Erica Deming (collectively the "District Defendants"), pursuant to Rules 12(b)(2)-(6), 12(e), and 10(a) of the Federal Rules of Civil Procedure.  (Dkt. 4).  Also pending is a motion for judgment on the pleadings filed by Defendant Valerie Tarragrossa pursuant to Rule 12(c) of the Federal Rules (Dkt. 26), and Plaintiffs' cross-motion to amend their complaint (Dkt. 29).  For the reasons set forth below, the District Defendants' motion is granted in part and denied in part, Defendant Valerie Tarragrossa's motion is granted, and Plaintiffs' cross-motion to amend is denied. As detailed below, none of Plaintiffs' claims plausibly allege a cause of action. However, because "the usual practice is to grant leave to amend the complaint" when a motion to dismiss is granted, *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990), with respect to those claims that are dismissed without prejudice, Plaintiffs are granted leave to file an amended complaint within 30 days of the date of and in accordance with this Decision and Order, if they can do so consistent with their obligations under Federal Rule of Civil Procedure 11.

## FACTUAL BACKGROUND

The following facts are taken from the complaint (Dkt. 1), which is the operative

pleading.   As is required at this stage of the proceedings, the Court treats Plaintiffs'

allegations as true.

Plaintiff D.S. is a child residing in the City of Rochester, New York, with her

mother, Plaintiff C.S.   (*Id.* at ¶ 4).   Plaintiff D.S. and Plaintiff C.S. are white.   (*Id.* at ¶ 4).

Plaintiff D.S. attended School No. 58, a public school in the RCSD known as World of

Inquiry, where the ratio of black and Hispanic children to white children is approximately

seven to one.   (*Id.*at ¶¶ 4, 6).   The allegations in the complaint arise from incidents

occurring at School No. 58.

Plaintiff D.S. began attending School No. 58 in the fall of 2016 for her third-grade

school year.   (*Id.* at ¶ 34).   Before the 2016 election, Plaintiff D.S.'s teacher, Defendant

Flanders, conducted a mock election and asked the children who they would vote for to

be President of the United States.   (*Id*. at ¶ 38).   Plaintiff D.S. stated that she would vote

for Donald Trump, whereas her other classmates supported Hillary Clinton's candidacy.

(*Id*. at ¶ 39).   As a result of Plaintiff D.S.'s mock vote, she was mistreated by her

classmates.  (*Id.* at ¶ 40).   In a morning circle designed to discuss the students' feelings

about the elections, Plaintiff D.S.'s classmates called her a racist and said that Plaintiff

C.S. must be a racist too.   (*Id.* at ¶ 42).   Plaintiff D.S.'s mock vote for Donald Trump

made her unpopular and resulted in her being mistreated by her teacher and harassed and

bullied by certain black and Hispanic classmates.   (*Id*. at ¶ 47).   Defendant Flanders did

not allow Plaintiff D.S. to participate in activities that other students engaged in and unfairly punished Plaintiff D.S. (*Id*. at ¶¶ 48, 58, 60).

Following the mock presidential vote, Defendant Resto, the administrative assistant to the principal, told Plaintiff C.S. that Plaintiff C.S. could no longer enter the school through the back door, even though that door was routinely used by other parents as an entrance. (*Id*. at ¶ 52). When Plaintiff C.S. raised the issue of Plaintiff D.S.'s disparate treatment with Defendant Webster, the Principal of School No. 58, the only option Plaintiffs were given as a remedy was to move Plaintiff D.S. to a different third grade classroom, which they did. (*Id*. at ¶¶ 62, 66). But in the new third grade classroom, Plaintiff D.S. was harassed, physically assaulted, and bullied by a male Hispanic classmate on a regular basis. (*Id*. at ¶¶ 67, 68, 69).

In her fourth-grade year, Plaintiff D.S. continued to be harassed, physically assaulted, and bullied by the same Hispanic classmate. (*Id*. at ¶¶ 76, 78, 79). The school failed to address the harassment and bullying, despite Plaintiff D.S.'s complaints. For example, when Plaintiff D.S. reported an incident to a physical education teacher, Plaintiff D.S. was punished for the report and the classmate was not. (*Id*. at ¶ 80, 81). The classmate stomped on Plaintiff D.S.'s foot so hard that Plaintiff D.S. required a doctor to remove part of her toenail. (*Id*. at ¶ 97). Plaintiff D.S. asked several adults, including Defendants Caveny and McCoy, teachers at School No. 58; Defendant Resto, administrative assistant to Defendant Webster; and the school nurse to call Plaintiff C.S., but was not permitted to do so. (*Id.* at ¶ 93). The school staff failed to supervise the

classmate and Plaintiff D.S., which allowed him to continue to make physical contact with her.  (*Id*. at ¶ 113).  When that classmate's father was informed that Plaintiff C.S. had complained about his son to the school and had a Facebook page to communicate about what was happening at the school, the classmate's father threatened Plaintiff D.S. with physical harm in the school building, yet no one from the school contacted the police about the incident.  (*Id*. at ¶¶ 120, 121).

In April of her fourth-grade school year, Plaintiff D.S. was removed from class by the school psychologist, Defendant Deming, without parental knowledge, who engaged in a fishing expedition about Plaintiff D.S.'s home life.  (*Id*. at ¶ 85).  Plaintiff D.S. mentioned that her brother had a BB gun and a referral was made to Monroe County Child Protective Services.  (*Id.* at ¶ 87).  This referral resulted in a visit to their home, which was determined to be unfounded.  (*Id*. at ¶¶ 85-88).  The unfounded referral by RCSD was intended to serve as retaliation against Plaintiff C.S. for her complaints regarding discrimination against Plaintiff D.S. at the school and the school's failure to keep Plaintiff D.S. safe from bullying and harassment.  (*Id*. at ¶ 89).

In April of 2018, Plaintiff C.S. informed Defendant Owens, the Chief of School Equity, and School No. 58 staff that Plaintiff D.S. was being taken to a doctor to assess the physical and psychological effects from her experience in school.  (*Id*. at ¶¶ 28, 99). On June 19, 2018, Plaintiff C.S. paid an independent education specialist to conduct an assessment of Plaintiff D.S. and the specialist determined that Plaintiff D.S. met the criteria for Other Health Impairment, Learning Disability, and Emotional Disturbance,

resulting from the bullying, harassment, and abuse she experienced in school.  (*Id*. at ¶¶ 154, 156. 157).  RCSD disagreed with the educational assessment and refused to provide special education services for Plaintiff D.S.  (*Id*. at ¶¶ 159, 160).  Plaintiff C.S. was forced to hire an attorney and file for mediation, which ultimately resulted in the imposition of a proposed Section 504 plan for Plaintiff D.S.  (*Id*. at ¶ 161).

In fifth grade, Plaintiff D.S. continued to experience harassment and bullying by her classmates.  (*Id*. at ¶¶ 162, 163).  An African-American female classmate pulled Plaintiff D.S.'s hair and then falsely reported that D.S. had used the "n" word.  (*Id*. at ¶¶ 163, 167).  The school credited the classmate's fabrication and Plaintiff D.S. was forced to endure a "Peace Circle" to discuss her use of that word.  (*Id*. at ¶ 169).  In the Peace Circle, Defendant Tarragrossa, an employee of the Center for Youth on contract to the RCSD, and Defendants Martin and Carlett, teachers at School No. 58, accused Plaintiff D.S. of being racist based on her alleged use of the "n" word.  (*Id*. at ¶ 171).  In the Peace Circle, Defendant Tarragrossa stated, "someone here has been racist, and we want to talk about that" which reinforced that Plaintiff D.S. was a racist and was a form of harassment.  (*Id*. at ¶ 173).

On September 24, 2018, a meeting was held about the hair pulling incident at which Plaintiff C.S. learned that parents of Plaintiff D.S.'s classmates were informed that Plaintiff D.S. had made a racially charged statement.  (*Id*. at ¶¶ 174, 176).  This further increased the perception that Plaintiffs were racists.  (*Id*. at ¶ 177).  At a meeting the following day with Defendant Smith, the Assistant Principal at School No. 58; Defendant

- 6 -

Webster; Defendant Boyd, the Parent Liaison at the school; parents of five classmates, and two parent engagement representatives, Plaintiff C.S. was again accused of being racist and raising racist children.  (*Id*. at ¶ 182).  Each of the parents at the meeting said that they wanted Plaintiff D.S. removed from school.  (*Id*. at ¶ 185).

Incidents of harassment and bullying continued in September and October of that school year.  (*Id*. at ¶¶ 187-196).  Plaintiff C.S. met with Defendant Smith and requested him to fill out a report pursuant to New York's Dignity for All Students Act ("DASA") on those incidents but Plaintiff C.S. was told to file the report herself.  (*Id*. at ¶¶ 197, 198).  The harassment and assaults against Plaintiff D.S. continued in November, December, and January. (*Id*. at ¶¶ 203-09).  Following several requests by Plaintiff C.S. that steps be taken by the school to protect Plaintiff D.S., in January of 2019, Plaintiff C.S. was promised that one additional adult would be placed in D.S.'s classroom, but it did not happen immediately and when it did, it was not adequate.  (*Id*. at ¶¶ 210, 211, 214).

In February 2019, Defendant Martin (a teacher) accused Plaintiff D.S. of coloring a picture for Black Lives Matter week in "blackface."  (*Id*. at ¶ 220).  Defendant Martin then loudly stated that Plaintiff D.S. was being racist in front of her classmates.  (*Id*. at ¶ 221).  The statement by Defendant Martin was part of a pattern of racial discrimination suffered by Plaintiff D.S. as a result of her being a minority student.  (*Id*. at ¶ 224).  At the end of that school year, a one-on-one aide was provided for Plaintiff D.S.'s safety,

which made her stand out from the other children but was necessary for her safety.  (*Id*. at ¶ 241).

As a result of Plaintiff C.S.'s advocacy for her child, she was blocked from using the school Facebook page, which is the primary method for parents to be informed of school events and activities.  (*Id*. at ¶¶ 244, 245, 246).  Defendants also retaliated against Plaintiff C.S.'s older son as a result of Plaintiff C.S.'s complaints about the bullying and harassment she and Plaintiff D.S. have received.  (*Id*. at ¶ 251, 255).

## PROCEDURAL BACKGROUND

Plaintiffs filed their complaint on July 16, 2019.  (Dkt. 1).  The District Defendants filed a motion to dismiss the complaint on September 9, 2019.  (Dkt. 4). Plaintiffs filed their response on September 24, 2019 (Dkt. 5, 6), and the District Defendants replied on October 1, 2019 (Dkt. 8).  Defendant Tarragrossa filed an answer to the complaint on December 5, 2019. (Dkt. 13).

On August 10, 2020, Defendant Tarragrossa filed a motion for judgment on the pleadings.  (Dkt. 26).  In response, Plaintiffs filed a cross-motion to amend the complaint (Dkt. 29), which is opposed by Defendant Tarragrossa (Dkt. 31) and the District Defendants (Dkt. 32).  Plaintiffs filed a reply in support of their motion to amend (Dkt. 37).

**DISCUSSION**

I.    **Legal Standard on Motions to Dismiss[2]**

   A.    **Federal Rules of Civil Procedure 12(b)(2), 12(b)(4) and 12(b)(5)—Lack of Personal Jurisdiction, Insufficient Process, and Insufficient Service of Process**

Under Federal Rule of Civil Procedure 12(b), a defendant may assert the following defenses, among others, by motion: lack of personal jurisdiction; insufficient process; and insufficient service of process. Fed. R. Civ. P. 12(b)(2), (4), (5). "[A] Rule 12(b)(4) motion is a challenge to the form of the process rather than the manner or method of its service, whereas a Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint."   *Coon v. Shea*, No. 2:14-CV-85, 2014 WL 5847720, at *4 (D. Vt. Sept. 5, 2014) (quotation omitted), *report and recommendation adopted in relevant part*, No. 2:14-CV-85, 2014 WL 5849053 (D. Vt. Nov. 12, 2014). "Objections pursuant to Rule 12(b)(2) concern lack of personal jurisdiction, which results when a summons and complaint have not been served on the defendant pursuant to Rule 12(b)(5)." *Jackson v. City of N.Y.*, No. 14-CV-5755 GBD KNF, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (quotation omitted); *Marquez v. Starrett City Assoc.*, 406 F. Supp. 3d 197, 203 (E.D.N.Y 2017) ("Because failure to comply with the requirements of Rule 4 goes to whether the Court has personal jurisdiction over Defendant, the Court

---

[2]    The District Defendants' notice of motion indicates that they are moving to dismiss the complaint for improper venue pursuant to Rule 12(b)(3).  This ground is not discussed in the District Defendants' submissions and the Court presumes the District Defendants have abandoned this argument as a basis for their motion and will not address it herein.

construes this challenge as a motion pursuant to Rules 12(b)(2) and 12(b)(4).”); *see also* C. Wright, A. Miller, & M. Kane, 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.) (“Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him.”).

“Objections to sufficiency of process under Fed. R. Civ. P. 12(b)(4) must identify substantive deficiencies in the summons, complaint or accompanying documentation.” *DiFillippo v. Special Metals Corp.*, 299 F.R.D. 348, 352-53 (N.D.N.Y. 2014) (citation omitted).  “[A] Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons.”  *Jackson* 2015 WL 4470004, at *4 (quoting Charles Alan Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. § 1353 (3d ed. 2004)).

By contrast, “[a] Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint.”  *Id.* (quoting 5B Wright & Miller, Fed. Prac. & Proc. § 1353 (3d ed. 2004)); *DeLuca v. AccessIT Grp.*, *Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010) (“A defendant may move to dismiss under Rule 12(b)(5) for insufficient service of process.  In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons.”) (citation omitted)).  “On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient.” *Ahluwalia v. St. George's*

*Univ.*, *LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quotation omitted), *aff'd sub nom.*

*Ahluwalia v. St. George's Univ.*, 626 F. App'x 297 (2d Cir. 2015); *Khan v. Khan,* 360 F.

App'x 202, 203 (2d Cir. 2010) (burden is on plaintiff to establish that service was

sufficient); *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, No. 1:19-CV-00016 EAW,

2019 WL 1597497, at *6 (W.D.N.Y. Apr. 15, 2019) ("When a defendant raises a Rule

12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden

of proving its adequacy." (internal quotations and citations omitted)).

**B.    Federal Rule of Civil Procedure 12(b)(6) and 12(c)—Failure to State a Claim and Judgment on the Pleadings**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the complaint, documents

attached to the complaint as exhibits, and documents incorporated by reference in the

complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court

should consider the motion by "accepting all factual allegations as true and drawing all

reasonable inferences in favor of the plaintiff." *Trs. of Upstate New York. Eng'rs*

*Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S.

Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

"Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 402 (W.D.N.Y. 2008). "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Aboushama v. EMF Corp.*, 214 F. Supp. 3d 202, 205 (W.D.N.Y. 2016) (quoting *Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015)).

## II.   District Defendants' Motion to Dismiss

The District Defendants challenge both the sufficiency of the summonses and the manner in which they were served upon the individual defendants.  They also contend that Plaintiffs' complaint fails to state a claim upon which relief may be granted.

### A.   Sufficiency of Process on the Individual Defendants

The District Defendants contend that all claims against the individual defendants must be dismissed pursuant to Rule 12(b)(4) because the summonses for the individual defendants were defective.  (Dkt. 4-4 at 3, Dkt. 8 at 2).  Specifically, the District Defendants contend that the summonses state, "C/O the Rochester City School District," and do not include addresses for each individual defendant.  (Dkt. 4-4 at 2-3).

Rule 4 requires that a summons "be directed to the defendant."  Fed. R. Civ. P. 4(a)(1)(B).  "While Rule 4(a) requires that a summons be directed to defendant, it sets forth no requirement regarding defendant's address."  *Spiess v. Meyers*, 483 F. Supp. 2d 1082, 1093 (D. Kan. 2007) ("Here, the original summonses name Meyers and Foreman as defendants, which is sufficient under Rule 4(a) despite the fact that the summonses list incorrect addresses."); *Marquez*, 406 F. Supp. 3d at 203 ("Put simply, to be compliant with Rule 4, the correct name of the defendant must appear on the summons.").

In addition, even were Plaintiffs required to list personal addresses for each defendant on the summonses, "where the identified defects in a summons are merely technical, 'the appropriate remedy . . . [is] not to dismiss the claims but to serve an amended summons[.]'"  *Oliver v. N.Y. State Police*, No. 1:17-CV-01157 EAW, 2019 WL

453363, at *5 (W.D.N.Y. Feb. 5, 2019) (quoting *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 JG VVP, 2011 WL 7053807, at *45 (E.D.N.Y. Jan. 4, 2011)); *see also Ray v. Ray*, No. 18 CIV. 7035 (GBD), 2019 WL 1649981, at *3 n.6 (S.D.N.Y. Mar. 28, 2019) ("However, any defective service could be cured." (quoting *Jean-Laurent v. Cornelius*, No. 15 Civ. 2217 (JGK), 2017 WL 933100, at *1 (S.D.N.Y. Mar. 8, 2017))), *aff'd*, 799 F. App'x 29 (2d Cir. 2020); *Marquez*, 406 F. Supp. 3d at 204 ("A failure to properly name the defendant need not be fatal.  Of course, every effort should be made to comply with the form of summons requirements stated in Rule 4(a).  However, technical errors that are neither misleading nor prejudicial can be cured through an amendment, the right to which should be liberally granted.").

Here, the summonses were directed to each individual defendant, as required by Rule 4.  To the extent that a failure to put a home address was error, it was neither misleading nor prejudicial and does not warrant dismissal.  On this basis, the District Defendants' motion to dismiss the claims against the individual defendants pursuant to Fed. R. Civ. P. 12(b)(4) is denied.

### B.     Sufficiency of Service on the Individual Defendants

In addition to challenging the sufficiency of the process, the District Defendants challenge the method of service by Plaintiffs on the individual District Defendants and move to dismiss the complaint pursuant to Rules 12(b)(2) and (b)(5).  Specifically, they contend Plaintiffs could not effectuate service by leaving the papers with individuals who did not have authority to accept them and by leaving them in locations where the

individual defendants could not properly be considered to be employed.  (Dkt. 4-4 at 3). In response, Plaintiffs argue that "the defendants misrepresented the law and made service of the summons and complaint more difficult than it had to be."  (Dkt. 5-3 at 5).

Pursuant to Fed. R. Civ. P. 4(e), Plaintiffs could effectuate service by any of the following means:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Service of process in New York is governed by section 308 of the Civil Practice Law and Rules ("CPLR").  According to CPLR 308(2), service can be made "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business[.]"  CPLR 308(2).  The statute defines "actual place of

- 15 -

business" as including "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business."  CPLR 308(6).

"New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business."  *Maldonado v. Arcadia Bus. Corp*., No. 14CV4129DLIRML, 2015 WL 12791329, at *2 (E.D.N.Y. Aug. 27, 2015) (quoting *Warshun v. New York Cmty. Bancorp., Inc.*, 957 F. Supp. 2d 259, 266 (E.D.N.Y. 2013)); *Leung v. New York Univ*., No. 08-CV-05150 (GBD), 2016 WL 1084141, at *6 (S.D.N.Y. Mar. 17, 2016) (noting that "the phrase 'actual place of business' is not necessarily synonymous with being 'physically present with regularity.'  Indeed, '[n]o definitive test has emerged as to the meaning of actual place of business.'" (quoting *Ascencio-Sutphen v. McDonald's Corp*., 16 Misc. 3d 184, 187 (Sup. Ct. Bronx Cnty. 2007))).  "The key requirement is a reasonable reliance on prompt redelivery of the summons to the defendant."  *Maldonado*, 2015 WL 12791329, at *2 (citing *Ascencio-Sutphen*, 16 Misc. 3d at 188); *Leung*, 2016 WL 1084141, at *5 ("Personal service by way of delivery to a suitable person at a defendant's actual place of business is allowed because it is presumed that the business relationship between the deliveree and the defendant will induce the prompt redelivery of the summons to the defendant." (quoting *Glasser v. Keller*, 149 Misc. 2d 875, 878-79 (Sup. Ct. Queens Cnty. 1991))).

The New York statute also directs that the summons be left with an individual of "suitable age and discretion." CPLR 308(2).  To be of suitable age and discretion, the "person 'must objectively be of sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant.'"  *Maldonado,* 2015 WL 12791329, at *2 (quoting *Entm't by J&J, Inc. v. Las Hermanas Rest., Inc.*, No. 02 CV 1119, 2006 WL 3711565, at *2 (S.D.N.Y. Dec. 14, 2006)).  "An adult co-worker can satisfy these requirements; it makes no difference if the individual refuses to give his name or gives a false one."  *Id.*; *Leung* 2016 WL 1084141, at *8 (rejecting argument that service was invalid because recipient was not authorized to accept service on defendant's behalf because "[a]uthorization, however, is not required. All that is required is that the person to whom service is made be of 'suitable age and discretion.'" (quoting *City of New York v. VJHC Dev. Corp.*, 125 A.D.3d 425, 425 (1st Dep't 2015))).

As an initial matter, while the District Defendants' motion argues that dismissal of Plaintiffs' complaint is warranted as against all of the individual defendants pursuant to Fed. R. Civ. P. 12(b)(5) (*see* Dkt. 4-4 at 3; Dkt 4-1 at ¶ 19), certain individual defendants were personally served (Defendants Flanders, Smith, Deming, and Kristoff) and dismissal against these defendants on this basis would be unwarranted.  (Dkt. 6 at ¶¶ 3, 4, 7).  As to those defendants, the motion to dismiss is denied.

As to the other individual District Defendants for whom Plaintiffs served by leaving the summons and complaint with an employee at School 58 (Dkt. 6 at ¶ 13)

(Defendants Garlock, Martin, Resto, Boyd, Caveny, McCoy, and Carlett), at the RCSD Law Department (Defendants Webster, Wade, and Owens), and the Hall of Justice (Defendant Reid), the Court rejects the District Defendants' first contention that the service was invalid because the individuals receiving the papers were not expressly authorized to accept service.  As noted, this is not required by CPLR 308(2).

A closer question is presented by whether or not these locations could be considered an "actual place of business" for these defendants at the time they were served.  Defendants argue that they cannot be so considered during the summer months when school is not in session.  Similar concerns exist for the three District Defendants for whom a summons and complaint were left at the RCSD Law Department (Defendants Webster, Wade, and Owens) (Dtk. 6 at ¶ 18), and for Defendant Reid, whose summons and complaint were left at the Hall of Justice, where District Defendants contend she was on a leave of absence from her position as a family court judge (Dkt. 6 at ¶¶ 21-27; Dkt. 4-1 at ¶ 7).  Taking all of the circumstances into consideration and in light of the fact that school was due to resume shortly after the papers were served and it can fairly be presumed that the business relationship between a school and its employees will induce the prompt redelivery of the summons to the defendants, the Court finds service on Defendants Garlock, Martin, Resto, Boyd, Caveny, McCoy, Carlett, Webster, Wade, and Owens sufficient.  Similarly, there being no information about the nature of the leave of absence for Defendant Reid, the same presumption would fairly apply that any papers

would be promptly delivered to her.  Accordingly, as to these defendants, the motion to dismiss is denied.

As to Defendant Deane-Williams, Plaintiffs contend upon their learning that she was no longer employed with RCSD, she was properly served pursuant to CPLR 308(4), which permits nail and mail service.  This subsection provides,

> where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such affixing or mailing, whichever is effected later; service shall be complete ten days after such filing, except in matrimonial actions where service hereunder may be made pursuant to an order made in accordance with the provisions of subdivision a of section two hundred thirty-two of the domestic relations law.

CPLR 308(4).

The affidavit of Plaintiffs' process server (Dkt. 6) indicates that he attempted personal service upon Defendant Deane-Williams on four separate occasions at one address and five attempts at another address.  (*Id.* at ¶¶ 28, 29).  After the fifth attempt, he attached the papers near the foyer directory of her building in an envelope addressed to her and was told by a leasing manager that they would be given to her (*id.* at ¶ 29f), and then mailed it to both addresses (*id.* at ¶ 30).  The Court finds this service compliant with

the requirements of the CPLR and District Defendants have not identified any reasons why it would not be.

For the foregoing reasons, the Court finds that Plaintiffs sufficiently effectuated service of process on the District Defendants. The District Defendants' motion to dismiss on this basis is accordingly denied.

### C.     Plaintiffs' Title VI (Count One) and Title IX (Count Two) Claims

Counts One and Two of Plaintiffs' complaint allege violations of Title VI and IX. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  In addition to a prohibition of intentional discrimination on the basis of race, color, or national origin, *see Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001), Title VI also prohibits, in certain circumstances, "the deliberate indifference of third parties to discrimination." *T.E. v. Pine Bush Cent. Sch. Dist*., 58 F. Supp. 3d 332, 355 (S.D.N.Y. 2014).

Title IX provides that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Similar to Title VI, a school district may be held liable for gender discrimination under Title IX if it was deliberately indifferent to the sexual harassment occurring. *Nungesser v. Columbia Univ*., 244 F. Supp. 3d 345, 362 (S.D.N.Y. 2017).

"Title VI and Title IX operate in the same manner, except that Title VI prohibits race discrimination in all programs receiving federal funds, whereas Title IX prohibits sex discrimination in education programs." *Manalov v. Borough of Manhattan Comm. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013).  Generally, "[a] plaintiff alleging racial or gender discrimination by a [school] must do more than recite conclusory assertions," and must "specifically allege the events claimed to constitute intentional discrimination," including the factual circumstances supporting a plausible inference of discrimination. *Id.* (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 712-14 (2d Cir. 1994)).

### 1.  Title VI and Title IX Claims Against the Individual Defendants

Plaintiffs' complaint does not specify against whom these causes of action are pled; however, to the extent Plaintiffs allege violations of Titles VI and IX against the individual defendants, any such claims are dismissed, as these statutes do not provide for individual liability.  *See Sutton v. Stony Brook Univ.,* No. 18-CV-7434(JS)(ARL), 2020 WL 6532937, at *6 (E.D.N.Y. Nov. 5, 2020) ("The Supreme Court has held that while Title IX creates liability for institutions and programs that receive federal funds, it does not 'authoriz[e] suit[s] against school officials, teachers, and other individuals.'" (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009))); *Ikedilo v. Statter,* No. 19-CV-9967 (RA), 2020 WL 5849049, at *8 (S.D.N.Y. Sept. 30, 2020) ("Defendants next argue that Plaintiff's Title VI, Title IX, and Section 504 claims against Defendants Statter, Kaban, and Melvin must be dismissed, as individual defendants cannot be held liable under those statutes.  The Court agrees, and thus dismisses those claims."); *Eldars*

- 21 -

*v. State Univ. of New York at Albany*, No. 1:19-CV-0801-GTS-DJS, 2020 WL 2542957, at *8 (N.D.N.Y. May 19, 2020) ("However, 'Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funding.'" (quoting *Goonewardena v. New York,* 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007))); *Russell v. Cnty. of Nassau*, 696 F. Supp. 2d 213, 238 (E.D.N.Y. 2010) ("Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funds."); *Wood v. Pittsford Cent. Sch. Dist.*, No. 03-CV-6541T, 2005 WL 43773, at *7 (W.D.N.Y. Jan. 10, 2005) ("Plaintiff . . . may not proceed with her Title IX claims against the individual defendants, as Title IX does not provide for a remedy against individuals.").

Accordingly, Plaintiffs' claims for violation of Titles VI and IX are dismissed with prejudice as against the individual defendants.

### 2. Title VI and Title IX Claims Against RCSD and Board of Education

The District Defendants also move to dismiss Plaintiffs' Title VI and IX claims against RCSD and the Board of Education of the RCSD, arguing that Plaintiffs have not made a *prima facie* showing of a violation of either statute or plausibly pled a showing of discrimination on the basis of Plaintiff D.S.'s race or gender in violation of Title VI and Title IX, respectively. The Court agrees.

### a.      Title VI Against RCSD and Board of Education

Liability for deliberate indifference to race-based student-on-student harassment may arise where "a plaintiff establishes: (1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference." *T.E.*, 58 F. Supp. 3d at 355 (quoting *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012)); *D.W.M. by Moore v. St. Mary Sch.*, No. 2:18-CV-3099DRHGRB, 2019 WL 4038410, at *14 (E.D.N.Y. Aug. 27, 2019) ("To plead a deliberate indifference claim under Title VI, the plaintiff must allege facts demonstrating that the school (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." (citations omitted)).  In order to qualify as deliberate indifference, the conduct "must, at a minimum, cause [the student] to undergo harassment or make [the student] liable or vulnerable to it." *H.B. and S.B. v. Monroe Woodbury Central Sch. Dist.*, No. 11-CV-5881(CS), 2012 WL 4477552, at *14 (S.D.N.Y. Sept. 27, 2012) (quoting *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 596 (S.D.N.Y.2011)).  A school district will only be found deliberately indifferent if its actions were clearly unreasonable under the circumstances, but "when weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians." *Zeno*, 702 F.3d at 666.

Plaintiffs have adequately alleged that the RCSD exercised adequate control over the circumstances giving rise to Plaintiffs' allegations, possessed the authority to address

the allegations, and had actual notice of the alleged harassment.  *See id.* at 665.  "A school district, the Supreme Court noted, exercises substantial control over the circumstances of the harassment when it occurs 'during school hours and on school grounds.'"  *Id.* at 665 (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646 (1999)).  Here, the allegations of harassment contained in Plaintiffs' complaint occurred on school grounds and Plaintiffs have sufficiently alleged that the school had control over and was aware of the alleged harassment against Plaintiff D.S. and these requirements are accordingly satisfied.

But control is not the end of the inquiry.  Rather, harassment is actionable only where it is severe, pervasive, offensive, and impermissibly discriminatory in nature. Here, taking the allegations in Plaintiffs' complaint as true, as a threshold matter, Plaintiffs have not adequately pled that the alleged harassment faced by Plaintiff D.S. was discriminatorily race-based and driven by the fact that she is white.  Instead, Plaintiffs repeatedly contend throughout their complaint that the bullying and harassment suffered by Plaintiff D.S. was in response to and driven by Plaintiffs' perceived beliefs about race and their preferred presidential candidate.  None of the allegations in the complaint allege that Plaintiff D.S. was called names or assaulted with any reference to her race.  Being treated differently as a result of one's political beliefs is not the equivalent of discrimination that arises from an individual's particular race, as is required to establish a violation of Title VI.

Further, even if certain instances of the harassment Plaintiff D.S. faced could be considered to be related to her race, she has not alleged that the harassment was so severe, pervasive, and objectively offensive that it deprived her of access to the educational benefits or opportunities provided by the school.  Aside from conclusory allegations, the majority of the allegations of harassment in the complaint are not linked to her purported racism at all, and notwithstanding the alleged harassment, Plaintiff D.S. remained at School No. 58.  *See Manalov* 952 F. Supp. 2d at 532 (dismissing Title VI claim where conclusory statements in complaint that professors "blatantly discriminated against all white males" and "created an adverse education environment" amounted to threadbare recitals and "[N]owhere in either the Complaint or his opposition papers does [plaintiff] allege that any defendant referred to his race or gender, nor does he recite any other fact from which race- or gender-based discriminatory intent reasonably could be inferred."); *D.C. v. Copiague Union Free Sch. Dist.*, No. 16-cv-4546(SJF)(AYS), 2017 WL 3017189, at *9-10 (E.D.N.Y. Jul. 11, 2017) (granting motion to dismiss Title VI claim where allegations that plaintiff was referred to in a racially derogatory manner on two occasions one year apart was not sufficiently severe or pervasive to sustain a Title VI claim); *H.B. and S.B.*, 2012 WL 4477552, at *15, 17 (granting motion to dismiss where the complaint alleged only one reference to race-related name-calling, holding that one instance of a student using racial slurs could not be considered to be so severe, pervasive and objectively offensive, as required and although plaintiff's grades and performance on soccer team declined, insufficient to show deprivation of educational opportunities).

Because the allegations in Plaintiffs' complaint currently fail to plausibly allege actionable harassment on the basis of race, Plaintiffs' claim for violation of Title VI is dismissed without prejudice as against RCSD and the Board of Education.  As explained further below, Plaintiffs will be permitted leave to amend their complaint to attempt to remedy the deficiency.

**b.      Title IX Against RCSD and Board of Education**

Similar to Title VI, "[a] school may be held liable under [Title IX] if it was 'deliberately indifferent to sexual harassment, of which [it] ha[d] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Nungesser*, 244 F. Supp. 3d at 362 (quoting *Davis*, 526 U.S. at 650).  "The student-on-student or teacher-on-student harassment forming the basis for a Title IX claim must also, of course, be 'gender-oriented.'" *Id.* (quoting *Davis*, 526 U.S. at 651).

Much like Plaintiffs' Title VI claim, the Court concludes that Plaintiffs have not sufficiently pled a claim for deliberate indifference to gender-based harassment in violation of Title IX.  As noted, in order to state such a claim, "the harassment must be '*because of* gender,' not simply involve gender-based terms."  *H.B. and S.B.*, 2012 WL 4477552, at *16 (quoting *Patenaude v. Salmon River Cent. Sch. Dist.*, No. 03-CV-1016, 2005 WL 6152380, at *5 (N.D.N.Y. Feb. 16, 2005)); *see also Nungesser*, 244 F. Supp. 3d at 362–63 ("Harassment, 'even harassment between men and women' is not automatically considered to be gender-based discrimination 'merely because the words

used have sexual content or connotations.'" (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998))); *Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 197 (D. Conn. 2016) ("Doe does not sufficiently allege that he was bullied, harassed, and assaulted because of his gender. . . . The terms 'fat ass' and 'baby,' are not associated with gender, and other courts in this Circuit have found that the terms 'pussy,' 'faggot,' and 'bitch' are also insufficient to suggest that a student was harassed on the basis of gender.").

Here, Plaintiffs have not identified any harassment that arose because of Plaintiff D.S.'s gender. Two of the principal antagonists responsible for her harassment were male, but another was a female classmate. None of the allegations in the complaint identify Plaintiff D.S.'s gender as being the motivation for the harassment against her. While some of the name calling had gender-related connotations, the use of those terms as alleged does not plausibly allege gender-based animus necessary to support a Title IX claim. *Doe v. Patrick*, 437 F. Supp. 3d 160, 181 (N.D.N.Y. 2020) (granting summary judgment on Title IX claim where plaintiff presented no evidence that harassment was gender-based); *H.B. and S.B.*, 2012 WL 4477552, at *17 (dismissing Title IX claim notwithstanding that plaintiff was called insults with gender connotations (e.g., "whore" and "bitch") where she was also called names not associated with gender, suggesting she was being picked on for other reasons). This is particularly the case here where the name-calling with the gender-based connotations was apparently generated by one

particular individual (*see* Dkt. 1 at ¶ 69), who Plaintiffs allege also demonstrated loud and disruptive behavior toward other children (*id*. at ¶ 108).

Because the allegations in Plaintiffs' complaint currently fail to demonstrate actionable harassment on the basis of sex, Plaintiffs' claim for violation of Title IX is dismissed without prejudice as against RCSD and the Board of Education.  As explained further below, Plaintiffs will be permitted leave to amend their complaint to attempt to remedy the deficiency.

### D.    Section 1983 Claims

Here, Plaintiffs' claims styled as First Amendment Retaliation (Claim Three), Violation of Civil Rights under 42 U.S.C. § 1983 (Claim Five), and Equal Protection (Claim Seven) all appear to arise under § 1983.

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "A plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation."  *Bellinger v. Fludd*, No. 20-CV-2206 (EK)(SIL), 2020 WL

6118823, at *2 (E.D.N.Y. Oct. 16, 2020) (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010)).

"School districts and boards of education are considered municipal entities that can be sued under § 1983." *Martinetti v. Mangan*, No. 17-cv-5484 (KMK), 2019 WL 1255955, at *7 (S.D.N.Y. Mar. 19, 2019) (quoting *Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-CV-6594, 2018 WL 2100605, at *16 (W.D.N.Y. May 7, 2018)).  But liability only arises under § 1983 if the action is taken pursuant to an official municipal policy, which can be established by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Id.* at *8-9 (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

### 1.  First Amendment Retaliation Claim (Count Three)

Plaintiffs' First Amendment claim alleges that Plaintiff C.S. had the right to communicate with the school about her concerns regarding Plaintiff D.S.'s experiences and to report the instances of bullying and harassment suffered by Plaintiff D.S.  They allege that in retaliation for exercising those rights, defendants took adverse action against Plaintiffs including labeling Plaintiffs as racist, interrogating Plaintiff D.S. which

resulted in the investigation by Child Protective Services, blocking Plaintiff C.S. from the school Facebook page, preventing Plaintiff C.S. from participating in school meetings, and trying to wrongly retrieve an instrument from Plaintiff C.S.'s son.

To state a claim for First Amendment retaliation, a plaintiff must establish: (1) an interest protected by the First Amendment; (2) defendants' conduct or adverse action was motivated by the exercise of that First Amendment right; and (3) defendants effectively chilled the exercise of that right or caused some other concrete harm. *C.T. v. Valley Stream Union Free Sch. Dist.,* 201 F. Supp. 3d 307, 314 (E.D.N.Y. 2016) (citing *Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 F. App'x 714, 717 (2d Cir. 2013)); *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (plaintiff has standing to assert a First Amendment retaliation claim where "he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm. Various non-speech related harms are sufficient to give a plaintiff standing.").

Arguably, Plaintiffs have sufficiently pled the elements of such a claim for purposes of a Fed. R. Civ. P. 12(b)(6) motion. *See Jones v. Bay Shore Union Free Sch. Dist*., 947 F. Supp. 2d 270, 275 (E.D.N.Y. 2013) (denying motion to dismiss First Amendment retaliation claim where "Plaintiff alleges that Defendants retaliated against him for expressing criticism of the District by prohibiting Plaintiff from entering District property or attending Board meetings, accusing Plaintiff of having engaged in inappropriate conduct while employed with the District approximately twenty years ago,

and disproportionately punishing his daughter."). But it is not clear from Plaintiffs' complaint against whom this claim is being asserted. The complaint alleges that in response to Plaintiff C.S.'s protected speech, "the defendants took adverse action." (Dkt. 1 at ¶ 286). While some examples are then given that reference particular defendants, the complaint does not make clear if those are merely supporting factual allegations or a specific assertion of liability and against whom it is intended to be asserted. Nor has a policy been identified or alleged to the extent the claim is asserted against the municipal defendants. *5465 Route 212, LLC v. N.Y. St. Dep't of Transp.*, No. 1:19-CV-01510-BKS-DJS, 2020 WL 6888052, at *9 (N.D.N.Y. Nov. 24, 2020) ("Because the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations." (quoting *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 138 F. Supp. 3d 282, 293 (W.D.N.Y. 2015), *vacated in part on other grounds*, 655 F. App'x 25 (2d Cir. 2016)); *Wilson v. City of New York,* No. 15-CV-3192 (KBF), 2016 WL 2858895, at *3 (S.D.N.Y. May 16, 2016) (denying motion to amend where "[t]he proposed amended complaint does not identify what individual defendant took what action or otherwise provide any means of distinguishing one defendant's personal involvement from another's. This approach to pleading does not comply with the requirement, in the § 1983 context, that a defendant only face claims that he has been sufficiently alleged to have personally committed."); *see also Atuahene v. City of Hartford,* 10 F. App'x 33, 34 (2d Cir. 2001) (holding that complaint failed to meet

- 31 -

minimum pleading standard "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct").

In light of these deficiencies, Plaintiffs' claim for First Amendment retaliation is dismissed without prejudice.  As explained further below, Plaintiffs will be permitted leave to amend their complaint to attempt to remedy the deficiency.

### 2.  Violation of Civil Rights Claim (Count Five)

Plaintiffs' claim for violation of civil rights is asserted against the "individual capacity defendants" and alleges that they "violated Title VI, Title IX, the Equal Protection Claims and the right to Free Speech under the First Amendment to the US Constitution."  (Dkt. 1 at ¶ 312).

As with the previous claim, this claim fails for a lack of specificity by grouping all of the individual defendants together without particularizing the allegations tied to each defendant.  *See 5465 Route 212, LLC,* 2020 WL 6888052, at *9.  This lack of specificity subjects the claim to dismissal.

But additionally, the claim fails for seemingly being duplicative of the relief sought elsewhere in the complaint and not identifying an independent claim for relief. *H.B. and S.B.*, 2012 WL 4477552, at *18 (dismissing claim for violation of federal civil rights alleging a failure to address bullying and creating a hostile educational environment because pleading was not clear what claim was being asserted).

- 32 -

In light of these deficiencies, Plaintiffs' claim for violation of civil rights is dismissed without prejudice.  As explained further below, Plaintiffs will be permitted leave to amend their complaint to attempt to remedy the deficiency.

### 3.   Equal Protection Claim (Count Seven)

Plaintiffs' Equal Protection claim alleges that the actions and inactions of the individual defendants violated Plaintiffs' rights guaranteed by the Fourteenth Amendment.

"Generally, to maintain an equal protection claim, a plaintiff must 'show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 110 (N.D.N.Y. 2016) (quoting *Miner v. Clinton Cty.*, 541 F.3d 464, 474 (2d Cir. 2008)).  "In the alternative, he could pursue an 'equal protective claim under a theory of discriminatory application of the law, or under a theory of discriminatory motivation underlying a facially neutral policy or statute.'"  *Rodriguez v. Clinton*, 357 F. App'x 355, 357 (2d Cir. 2009) (quoting *Pyke v. Cuomo*, 258 F.3d 107, 108-09 (2d Cir. 2001)).

Here, like the previous claims, this claim fails for a lack of specificity in pleading by grouping all of the individual defendants together without particularizing the allegations tied to each defendant.  *See 5465 Route 212, LLC,* 2020 WL 6888052, at *9.

But the claim as pled also fails on the merits.  It is not wholly clear what theory Plaintiffs' equal protection claims rests upon, but it appears to derive from their claim that the RCSD failed to prevent the alleged race and gender-based harassment.  For the same reasons that Plaintiffs' Title VI and Title IX fail for insufficiently pleading impermissible discrimination on the basis of race or sex, so too does their claim for equal protection which arises from the same exact facts.  *Patrick*, 437 F. Supp. 3d at 181 (denying equal protection claim for deliberate indifference when any harassment that occurred was motivated not by plaintiff's sex but because they blamed him for getting a coach suspended); *D.C.*, 2017 WL 3017189, at *6 ("To state a claim for violation of the Fourteenth Amendment's Equal Protection Clause, the plaintiff 'must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender.'" (quoting *Hayden v. Cty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)); *Chandrapaul v. City Univ. of New York*, No. 14CIV790AMDCLP, 2016 WL 1611468, at *23 (E.D.N.Y. Apr. 20, 2016) ("Like Title VI and Section 1981, allegations of discrimination under the Equal Protection Clause 'require that intentional discrimination be alleged in a non-conclusory fashion.'  Therefore, the plaintiff's claims under the Equal Protection Clause also fail.") (citations omitted); *Mislin v. City of Tonawanda Sch. Dist*., No. 02-CV-273S, 2007 WL 952048, at *12 n.16 (W.D.N.Y. Mar. 29, 2007) ("[T]here is no evidence in the record of any race-based discrimination (or reverse-race discrimination) against Mislin.  In any event, Plaintiffs' race-based equal protection

claims are also subject to dismissal because they are subsumed by their Title VI claims.").

In light of these deficiencies, Plaintiffs' claim for equal protection is dismissed without prejudice.  As explained further below, Plaintiffs will be permitted leave to amend their complaint to attempt to remedy the deficiency.

### E.  Municipal Liability for Failure to Train and Supervise (Count Four)

Plaintiffs seek to hold Defendants RCSD and the Board of Education of the RCSD liable for failing to adequately train school employees to prevent, investigate, and report bullying and discrimination, and supervise its employees to ensure compliance with the law.  They contend that Defendants RCSD and the Board of Education of the RCSD failed to comply with DASA, which sets requirements for bullying prevention.

As an initial matter, to the extent this claim can fairly be read to allege a cause of action arising from Defendants' alleged failure to comply with DASA, the claim is subject to dismissal, as no private right of action is contemplated by DASA.  *See E. Irondequoit Cent. Sch. Dist.*, 2018 WL 2100605, at \*20 ("[C]ourts in this Circuit have held that there is no private right to sue under DASA."); *Terrill*, 176 F. Supp. 3d at 109 ("Accordingly, for all of these reasons, the Court finds that DASA does not provide a private right of action, either express or implied, and Plaintiffs' third and fourth causes of action must therefore be dismissed.").

In their opposition to the motion to dismiss, Plaintiffs argue that the claim is not intended to assert an independent claim for failure to comply with DASA, but rather, that

the failure to comply with DASA is evidence that Defendants RCSD and Board of Education of RCSD failed to train their employees which caused the deliberate indifference to the race and gender-based bullying suffered by Plaintiff D.S.  (Dkt. 5 at ¶¶ 128-29).  Here, the allegations in the complaint do not clearly set forth the position Plaintiffs now take.  In addition, because the Court concludes that Plaintiffs have not sufficiently pled an underlying claim for race or gender-based discrimination, the failure to train claim, to the extent based upon the same facts, would similarly fail.  *See Mislin*, 2007 WL 952048, at *17 ("This Court has found that neither Greene nor Freedman violated Mislin's rights under the Fourth or Fourteenth Amendments.  As such, a finding of liability as to the School District for failure to hire, retain, train or supervise is precluded since there was no constitutional violation or injury.").

In light of these deficiencies as well as a lack of clear specificity as to the nature of the claim being asserted, Plaintiffs' claim for failure to train is dismissed without prejudice.  As explained further below, Plaintiffs will be permitted leave to amend their complaint to attempt to remedy the deficiency.

### F.  State law claim Negligent Supervision/Failure to Keep Safe (Count Six)

Count Six in Plaintiffs' complaint alleges that defendants failed to take appropriate action and were negligent in protecting Plaintiff D.S. from abuse, which caused her injury and suffering.  "Schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the

absence of adequate supervision." *Motta ex rel. Motta v. Eldred Cent. Sch. Dist.*, 141 A.D.3d 819, 820 (2016) (quoting *Mirand v. City of New York*, 84 N.Y.2d 44, 49 (1994)).

Arguably, Plaintiffs have sufficiently pled the elements of such a claim for purposes of a Fed. R. Civ. P. 12(b)(6) motion. This claim though suffers from the same flaw as several other of Plaintiffs' claims in that it is unclear from the allegations which defendants the claim is being asserted against. *See 5465 Route 212, LLC,* 2020 WL 6888052, at *9. With multiple defendants who possess varying relationships to Plaintiffs and conduct that spans over several years, it is simply impermissible to premise liability on a group basis as Plaintiffs have attempted to do.

In light of these deficiencies, Plaintiffs' claim for negligence is dismissed without prejudice. As explained further below, Plaintiffs will be permitted leave to amend their complaint to attempt to remedy the deficiency.

In sum and for the foregoing reasons, the District Defendants' motion to dismiss is denied in part and granted in part.

## III. Defendant Tarragrossa's Motion for Judgment on the Pleadings

Defendant Tarragrossa moves for judgment on the pleadings on the claims alleged against her in Plaintiffs' complaint, arguing that they fail to state cognizable claims.

### A. Count One and Count Two

Because Defendant Tarragrossa is an individual defendant, for the same reasons set forth above, any claims asserted against her pursuant to Title VI and Title IX must be dismissed. *See Sutton,* 2020 WL 6532937, at *6 ("The Supreme Court has held that

while Title IX creates liability for institutions and programs that receive federal funds, it does not 'authoriz[e] suit[s] against school officials, teachers, and other individuals.'"). Her motion for judgment on the pleadings on these two claims accordingly is granted and the claims are dismissed with prejudice.

## B. Section 1983 Claims

For the same reasons set forth above that Plaintiffs' § 1983 claims fail against the other individual defendants, so too do they fail to state a claim against Tarragrossa, and on this basis her motion for judgment on the pleadings is granted.

But Tarragrossa also asserts an additional basis for dismissal against her in that she cannot be considered a state actor to support a § 1983 claim.  As outlined above, "[a]n action under § 1983 has two elements: the defendant must (1) act under 'color of state law' to (2) deprive the plaintiff of a statutory or constitutional right." *Kennedy v. New York*, 167 F. Supp. 3d 451, 460 (W.D.N.Y. 2016) (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004)).  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295 (2d Cir. 1991).  As such, "[s]ection 1983 addresses only those injuries caused by state actors or those acting under color of state law."  *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). There are limited instances where a private party can be considered a state actor:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate" ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296, 121 S. Ct. 924, 148 L.Ed.2d 807 (2001)); *Ortolaza ex rel. E. v. Capitol Region Educ. Council*, 388 F. Supp. 3d 109, 117–18 (D. Conn. 2019) ("The effect of these considerations is to create a relatively high bar for an advocate seeking to demonstrate that a private party's conduct is that of a state actor, with its attendant constitutional liabilities.").

Defendant Tarragrossa is a private party, employed by the Center for Youth and not by the RCSD, as acknowledged in Plaintiffs' complaint. (Dkt. 1 at ¶ 26 "VALERIE TARRAGROSSA, (aka Ms. T), was all times mentioned herein, an employee of the Center for Youth Services who was contracted by RCSD to work at School 58 full time.")). As such, she is not a state actor for purposes of § 1983. In opposition to the motion for judgment on the pleadings, Plaintiffs argue that a determination on whether Defendant Tarragrossa is a state actor is premature without the benefit of discovery to explore whether she possibly meets the compulsion test, the joint action test, or public function test. (Dkt. 29-2 at 2-3). Because the complaint alleges that Defendant

Tarragrossa is employed by a private party and does not allege any factual bases to deem her to be a state actor, and where the claims substantively fail regardless of status, the Court rejects Plaintiffs' request to delay resolution of this issue.  *Rodriguez v. Clinton*, 357 F. App'x 355, 357 (2d Cir. 2009) (denying assertion of § 1983 claim for lack of evidence of "state action" where defendants merely acquiesced in decision by school's Parent Teacher Student Association, a private entity); *Stefanoni v. Darien Little League, Inc.*, 101 F. Supp. 3d 160, 173 (D. Conn. 2015) ("At the pleading stage, a plaintiff need not conclusively prove state action but must plausibly allege that it occurred by relying on more than "vague and conclusory" statements.").

For these reasons, Plaintiffs' claims against Defendant Tarragrossa arising under Section 1983 are dismissed without prejudice.  As explained further below, Plaintiffs will be permitted leave to amend their complaint to attempt to remedy the deficiency. Finally, to the extent Plaintiffs' remaining claim for negligence is intended to be asserted against Defendant Tarragrossa, it is dismissed without prejudice for the reasons explained above with respect to the District Defendants.

## IV.    Plaintiffs' Cross-Motion to Amend

In response to Defendant Tarragrossa's Motion for Judgment on the Pleadings, Plaintiffs cross-moved to amend their complaint.

"A district court has broad discretion in determining whether to grant leave to amend[.]"  *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).  Pursuant to Rule 15(a)(2), which provides that once the time for leave to amend as of right has expired, "a

party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

In addition, Local Civil Rule 15 provides:

(a) A movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion. The proposed amended pleading must be a complete pleading superseding the original pleading in all respects. No portion of the prior pleading shall be incorporated into the proposed amended pleading by reference.

(b)   Unless the movant is proceeding pro se, the amendment(s) or supplement(s) to the original pleading shall be identified in the proposed pleading through the use of a word processing "redline" function or other similar markings that are visible in both electronic and paper format.

Here, Plaintiffs did not provide a "redline" copy of their proposed amended pleading with their motion to amend, as required. Upon objection from Defendants, Plaintiffs sought leave from this Court to be relieved from this requirement (Dkt. 33), which was denied (Dkt. 34). The proposed pleading contains 338 numbered paragraphs and it is unreasonable to expect the parties or the Court to assess the amendments contained therein without the benefit of a "redline" version of the document, notwithstanding counsel's affidavit which explains the nature of the amendments. This failure alone subjects the motion to amend to dismissal. *Doe v. E. Irondequoit*, 2018 WL 2100605, at *5-6 (denying motion to amend in part for failure to provide a "redline" version of the proposed pleading: "It is crystal clear, however, that Local Rule 15(b) applies to Plaintiffs' motion to file a Second Amended Complaint, and because Plaintiffs

did not comply with that rule, the motion may be denied for that reason alone.").  In addition, because the proposed pleading accompanying the motion contains matters now resolved in this Decision and Order, permitting the filing of that pleading would not advance the litigation in a meaningful way.

As noted herein, the Court does find that it is in the interest of justice to permit Plaintiffs leave to amend their complaint to attempt to remedy some of the deficiencies identified herein.  Accordingly, within 30 days of the date of this Decision and Order, Plaintiffs may file an amended complaint attempting to allege any of the claims dismissed herein without prejudice.  Not only must any amended complaint cure the deficiencies identified herein in the event Plaintiffs seek to try to pursue a claim that has been dismissed without prejudice, but the amended complaint must also correct other deficiencies identified in the parties' papers, including misspelling of names, failure to redact Plaintiff D.S.'s first name in multiple locations, and be accompanied by a motion to proceed anonymously, if that remains Plaintiffs' intention.  *See Roe v. City of N.Y.,* No. 20-CV-9635 (LLS), 2020 WL 6875424, at *2 (S.D.N.Y. Nov. 20, 2020) ("If Plaintiffs wish to proceed anonymously with this action, they must file under seal, along with their amended complaint, a motion to proceed anonymously that states the reasons why the Court should permit them to do so."); *Roe v. Does 1-11*, No. 20-CV-3788-MKB-SJB, 2020 WL 6152174, at *1 (E.D.N.Y. Oct. 14, 2020) ("Permitting a party to proceed under a pseudonym is the 'exception. . . . A party seeking to proceed anonymously must sufficiently refute 'the presumption of disclosure.'" (citations omitted)).  Moreover, any

- 42 -

amended complaint must comply with the requirements of Federal Rule of Civil Procedure 11. *See Lisa Coppola, LLC v. Higbee*, No. 1:19-CV-00678, 2020 WL 1154749, at *11 (W.D.N.Y. Mar. 10, 2020) (although granting leave to replead upon dismissal of claim, reminding plaintiff that any newly asserted claim must also satisfy Fed. R. Civ. P. 11.). Failure to timely file the amended complaint in accordance with this Decision and Order will result in a dismissal of Plaintiffs' complaint with prejudice and direction to the Clerk to close this case.

## CONCLUSION

For the foregoing reasons, the District Defendants' motion to dismiss is granted in part and denied in part, Defendant Valerie Tarragrossa's motion is granted, and Plaintiffs' cross-motion to amend is denied, but Plaintiffs are granted leave to amend within 30 days of the date of and in accordance with this Decision and Order.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: November 30, 2020
        Rochester, New York

- 43 -