UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DS, an infant, by and through her parent
and natural guardian, CS, and CS,
individually, on her own behalf,

                 Plaintiffs,

       v.

ROCHESTER CITY SCHOOL DISTRICT,
et al.,

                 Defendants.

_____

      **DECISION AND ORDER**

      6:19-CV-6528 EAW

## <u>INTRODUCTION</u>

Plaintiff DS ("Plaintiff DS") and Plaintiff CS ("Plaintiff CS") (collectively "Plaintiffs") commenced this action against Defendants Rochester City School District ("RCSD"), the Board of Education of the RCSD ("BOE"), Barbara Deane-Williams, Karl Kristoff, Fatimat Reid, Sheelarani Webster, Charles Smith, Kim Garlock, Amy Martin, Nancy Resto, Shelly Boyd, Jessica Flanders, Elizabeth Caveny, Nicole McCoy, Megan Carlett, Valerie Torregrossa, Yolanda Asamoah-Wade, Idonia Owens, and Erica Deming, alleging federal claims pursuant to Title VI and 42 U.S.C. § 1983 and a state law claim for negligent supervision, arising from incidents at Plaintiff DS's elementary school. (Dkt. 48).

Pending before the Court is a renewed motion to dismiss filed by Defendants RCSD, BOE, Barbara Deane-Williams, Karl Kristoff, Fatimat Reid, Sheelarani Webster,

- 1 -

Charles Smith, Kim Garlock, Amy Martin, Nancy Resto, Shelly Boyd, Jessica Flanders, Elizabeth Caveny, Nicole McCoy, Megan Carlett, Yolanda Asamoah-Wade, Idonia Owens, and Erica Deming (*i.e.*, all defendants except Valerie Torregrossa) (collectively "Defendants"), pursuant to Rules 11 and 12(b)(6) of the Federal Rules of Civil Procedure.[1]   In a Decision and Order dated November 30, 2020 ("D&O"), the Court granted Defendants' prior motion to dismiss Plaintiffs' complaint but permitted Plaintiffs leave to amend.  (Dkt. 38).  The sufficiency of Plaintiffs' amended complaint (Dkt. 48) is now before the Court on the instant motion to dismiss (Dkt. 51).  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are taken from the amended complaint. (Dkt. 48).  The factual background of this case is set forth in detail in the D&O, familiarity with which is assumed for purposes of this Decision and Order.  The Court summarizes the key details below and includes relevant factual additions from the amended complaint.   As is required at this stage of the proceedings, the Court treats Plaintiffs' allegations as true.

Plaintiff DS is a child residing in the City of Rochester, New York, with her mother, Plaintiff CS.  (*Id.* at ¶ 4).  Plaintiff DS and Plaintiff CS are white.  (*Id.*).  Plaintiff

---

[1]   Defendants' motion is supported by an affidavit from counsel.   (Dkt. 51-1). W.D.N.Y. Loc. R. Civ. P. 7(a)(3) states in pertinent part as follows: "An affidavit, declaration, or affirmation must not contain legal arguments, but must contain factual and procedural background relevant to the motion it supports."   Nevertheless, counsel has included legal argument throughout the affidavit.   The Court will consider the affidavit but reminds all parties that compliance with the Court's Local Rules is expected.

DS attended School No. 58, a public school in the RCSD known as World of Inquiry, where the ratio of black and Hispanic children to white children is approximately seven to one. (*Id.*at ¶¶ 4, 42). The allegations in the amended complaint arise from incidents occurring at School No. 58.

Plaintiff DS began attending School No. 58 in the fall of 2016 for her third-grade school year. (*Id.* at ¶ 39). Prior to the 2016 presidential election, Plaintiff DS's teacher, Defendant Flanders, conducted a mock election and asked each of the children for whom they would cast their vote to be President of the United States. (*Id.* at ¶ 44). Plaintiff DS stated that she would vote for Donald Trump, whereas her other classmates supported Hillary Clinton's candidacy. (*Id.* at ¶ 45). As a result of Plaintiff DS's mock vote, she was perceived by her classmates to be racist and sympathetic to white supremacists. (*Id.* at ¶ 46). Plaintiff DS's classmates called Plaintiff DS and Plaintiff CS racist and told Plaintiff DS that "only white people vote for Trump and if you vote for Trump, you are a racist." (*Id.* at ¶¶ 48, 50). Plaintiff DS's mock vote resulted in her being mistreated by her teacher and harassed by certain African-American and Hispanic classmates in a manner that was race-based and driven by the fact that Plaintiff DS is white. (*Id.* at ¶ 49). Classmates called Plaintiff DS a white racist, white whore, white bitch, and other derogatory names that identified her race. (*Id.* at ¶ 59). Defendant Flanders did not allow Plaintiff DS to participate in activities that other students engaged in, unfairly punished Plaintiff DS, and did nothing to stop the name-calling by Plaintiff DS's classmates. (*Id.* at ¶¶ 49, 53, 61, 76).

Following the mock presidential vote, Defendant Resto, the administrative assistant to the principal, told Plaintiff CS that Plaintiff CS could no longer enter the school through the back door, even though that door was routinely used by other parents as an entrance.  (*Id*. at ¶ 70).  When Plaintiff CS raised the issue of Plaintiff DS's disparate treatment with Defendant Webster, the Principal of School No. 58, the only option given as a remedy was to move Plaintiff DS to a different third grade classroom, which they did.  (*Id*. at ¶¶ 84, 86).  But in the new third grade classroom, Plaintiff DS was harassed, physically assaulted, and bullied by a male Hispanic classmate on a regular basis.  (*Id*. at ¶¶ 89, 90, 96).  Plaintiff DS's Hispanic classmate told her she was racist and called her other vulgar names which specified her white race.  (*Id*. at ¶ 91).  The teachers did not correct the aggressive behavior and the harassment continued.  (*Id.* at ¶¶ 94, 96).  At the end of that school year, when Plaintiff CS went to the school to attend an RCSD School Based Planning training, she was told by Defendant Webster that she could no longer attend and needed to be "invited" and "cooperative" to attend.  (*Id.* at ¶ 103).

In her fourth-grade year, Plaintiff DS continued to be harassed, physically assaulted, and bullied by the same Hispanic classmate.  (*Id*. at ¶¶ 106, 109).  Defendants Caveny, McCoy, and Webster witnessed or were advised of the ongoing harassment and bullying of Plaintiff DS by her classmate but failed to address it.  (*Id.* at ¶¶ 107).  The Hispanic classmate told Plaintiff DS that she "sucks big black dick every day."  (*Id.* at ¶ 113).  A request by Plaintiff CS to set up a meeting between herself and that child's parents was refused.  (*Id.* at ¶ 119).

In April of her fourth-grade school year, Plaintiff DS was removed from class by the school psychologist, Defendant Deming, without parental notice, who engaged in a fishing expedition about Plaintiff DS's home life. (*Id*. at ¶ 121). Plaintiff DS mentioned that her brother had a BB gun and a referral was made to Monroe County Child Protective Services. (*Id*. at ¶ 123). This referral resulted in a visit to their home, which was determined to be unfounded. (*Id*. at ¶ 125). The unfounded referral by RCSD was intended to serve as retaliation against Plaintiff CS for her complaints regarding discrimination against Plaintiff DS at the school and the school's failure to keep Plaintiff DS safe from bullying and harassment. (*Id*. at ¶ 126).

In addition, the same Hispanic classmate falsely accused Plaintiff DS of using the "n" word, intentionally stomped on her foot or was otherwise physical with her, and in one instance stepped on her foot with such intensity that Plaintiff DS required a doctor to remove part of her toenail. (*Id*. at ¶¶ 130, 132, 138, 146, 147, 153). On several occasions, Plaintiff DS asked several adults, including Defendants Caveny and McCoy, (teachers at School No. 58), Defendant Resto, and the school nurse to call Plaintiff CS, but she was not permitted to do so. (*Id*. at ¶ 133, 154, 157).

Plaintiff CS routinely followed up with the school on reports of bullying suffered by Plaintiff DS. (*Id*. at ¶ 182). She sent numerous emails and made phone calls to individuals with authority to enact remedial measures to stop the harassment and retaliation, including specifically Defendant Owens, Defendant Asamoah-Wade, Defendant Reid, and Defendant Deane-Williams, but they did not effectively help end the

harassment of Plaintiff DS.  (*Id.* at ¶¶ 184-191).  Most of Plaintiff CS's communications were ignored.  (*Id.* at ¶ 192).

In April of 2018, Plaintiff CS informed Defendant Owens, the Chief of School Equity, and School No. 58 staff that Plaintiff DS was being taken to a doctor to assess the physical and psychological effects from her experience in school and reminding them that the school needed to keep Plaintiff DS safe.  (*Id.* at ¶¶ 142, 143).  On June 6, 2018, Plaintiff CS attended a meeting at RCSD offices to discuss the investigation of bullying and assaults against Plaintiff DS.  (*Id.* at ¶ 200).  Present at the meeting were Defendant Asamoah-Wade, Defendant Reid, Defendant Owens, and Defendant Kristoff.  (*Id.* at ¶ 201).  At the meeting, Plaintiff CS was accused of promoting Plaintiff DS's safety to further a social media cause and suggested Plaintiff CS had a political agenda.  (*Id.* at ¶¶ 203, 204).  Plaintiff CS was also informed that the RCSD investigation concluded that the foot stomping incident did not happen.  (*Id.* at ¶ 211).

On June 19, 2018, Plaintiff CS paid an independent education specialist to conduct an assessment of Plaintiff DS and the specialist determined that Plaintiff DS met the criteria for Other Health Impairment, Learning Disability, and Emotional Disturbance, resulting from the bullying, harassment, and abuse she experienced in school.  (*Id.* at ¶¶ 213, 215).  RCSD disagreed with the educational assessment and refused to provide special education services for Plaintiff DS.  (Id. at ¶ 218).  Plaintiff CS was forced to hire an attorney and file for mediation, which ultimately resulted in the imposition of a proposed Section 504 plan for Plaintiff DS.  (*Id.* at ¶ 220).

In fifth grade, Plaintiff DS continued to experience harassment and bullying by her classmates because of her race. (*Id*. at ¶¶ 222, 223, 229). An African-American female classmate pulled Plaintiff DS's hair and then falsely reported that DS had used the "n" word. (*Id*. at ¶¶ 231, 235). The school credited the classmate's fabrication because of their racial prejudice against Plaintiff DS and Plaintiff DS was forced to endure a "Peace Circle" to discuss her use of that word. (*Id*. at ¶¶ 236, 237). In the Peace Circle, Defendant Torregrossa, an employee of the Center for Youth on contract to the RCSD, and Defendants Martin and Carlett (teachers at School No. 58), accused Plaintiff DS of being racist based on her alleged use of the "n" word. (*Id*. at ¶¶ 237, 239). The Peace Circle reinforced the inflammatory allegation to her classmates that Plaintiff DS was a racist and was a form of harassment. (*Id*. at ¶ 243).

On September 24, 2018, a meeting was held about the hair pulling incident at which Plaintiff CS learned that parents of Plaintiff DS's classmates were informed that Plaintiff DS had made a racially charged statement. (*Id*. at ¶¶ 246, 247). This further increased the perception that Plaintiffs were racists, even though Plaintiff DS denied having used the racially charged statement. (*Id*. at ¶¶ 248, 249). At a meeting the following day with Defendant Smith (the Assistant Principal at School No. 58), Defendant Webster, Defendant Boyd (the Parent Liaison at the school), parents of five classmates, and two parent engagement representatives, Plaintiff CS was again accused of being racist and raising racist children. (*Id*. at ¶¶ 252, 255). Each of the parents at the meeting said that they wanted Plaintiff DS removed from school. (*Id*. at ¶ 263).

Incidents of harassment, bullying, and physical contact continued in September and October of that school year.  (*Id.* at ¶¶ 270-286).  Many of the vulgar words Plaintiff DS was called by her classmates were preceded by her race (*e.g.*, white bitch, etc.).  (*Id.* at ¶ 287).  Plaintiff CS met with Defendant Smith and requested him to fill out a report pursuant to New York's Dignity for All Students Act ("DASA") on those incidents but Plaintiff CS ended up filing the reports herself.  (*Id.* at ¶ 300).  The harassment and assaults against Plaintiff DS continued in November, December, and January, including an incident in January of 2019 where Plaintiff DS was called a "Saltine" by a classmate, a term of derision against white people.  (*Id.* at ¶¶ 301-305).  Following several requests by Plaintiff CS that steps be taken by the school to protect Plaintiff DS, in January of 2019, Plaintiff CS was promised that one additional adult would be placed in DS's classroom, but it did not happen immediately and when it did, it was not adequate.  (*Id.* at ¶¶ 309, 325).  Twice Plaintiff was unfairly suspended when she was merely defending herself from bullying and the suspensions were issued without notice and explanation as required.  (*Id.* at ¶¶ 312, 333).

In February 2019, Defendant Martin (a teacher) accused Plaintiff DS of coloring a picture for Black Lives Matter week in "blackface."  (*Id.* at ¶¶ 315, 316).  Defendant Martin then loudly stated that Plaintiff DS was being racist in front of her classmates.  (*Id.* at ¶ 317).  The statement by Defendant Martin was part of a pattern of racial discrimination suffered by Plaintiff DS as a result of her being a minority student.  (*Id.* at ¶ 323).  At the end of that school year, a one-on-one aide was provided for Plaintiff DS,

which made her stand out from the other children but was necessary for her safety.  (*Id*. at ¶ 340).

As a result of Plaintiff CS's advocacy for her child, she was blocked from using the school Facebook page, which is the primary method for parents to be informed of school events and activities.  (*Id*. at ¶¶ 345, 347, 349).  Plaintiffs were not given access to enter school classrooms, unlike family members of Plaintiff DS's African-American and Hispanic classmates.  (*Id*. at ¶ 354).  Defendants also retaliated against Plaintiff CS's older son as a result of Plaintiff CS's complaints about the bullying and harassment she and Plaintiff DS had received.  (*Id*. at ¶¶ 355, 361).

Plaintiffs assert claims against RCSD and BOE for violations of Title VI, 42 U.S.C. § 2000d (Count One) and municipal liability for failure to train and supervise pursuant to 42 U.S.C. § 1983 (Count Four).  They bring claims pursuant to 42 U.S.C. § 1983 for First Amendment retaliation (Count Two) against Defendant Webster, Defendant Garlock, and Defendant Resto, and violation of Equal Protection and Due Process (Count Three) against all individual defendants, and a state law claim for negligent supervision/failure to keep safe against all Defendants (Count Five).  Plaintiffs seek compensatory and punitive damages, attorneys' fees, costs, and interest as damages. (*Id*. at 62).

## PROCEDURAL BACKGROUND

Plaintiffs filed their complaint on July 16, 2019.  (Dkt. 1).  Defendants filed a motion to dismiss the complaint on September 9, 2019.  (Dkt. 4).  Plaintiffs filed a

motion to amend their complaint on September 3, 2020.  (Dkt. 29).  On November 30, 2020, the Court granted Defendants' motion to dismiss in part and granted Plaintiffs leave to amend.  (Dkt. 38).

On February 26, 2021, Plaintiffs filed their amended complaint.  (Dkt. 48). Defendants filed the instant motion to dismiss on March 22, 2021.  (Dkt. 51).  Plaintiffs filed their opposition on April 13, 2021 (Dkt. 54), and Defendants filed their reply on April 20, 2021 (Dkt. 55).

## DISCUSSION

### I.    Legal Standard on Motion to Dismiss

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate New York. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.   Defendants' Rule 12(b)(6) Motion to Dismiss

### A.   Plaintiffs' Title VI Claim (Count One)

Count One of Plaintiffs' amended complaint alleges a violation of Title VI.  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  In addition to a prohibition of intentional discrimination on the basis of race, color, or national origin, *see Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001), Title VI also prohibits, in certain circumstances, "the deliberate indifference of third parties to discrimination," *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 355 (S.D.N.Y. 2014).

"To state a claim under Title VI, a plaintiff must allege that 'the defendant discriminated against him on the basis of race, that that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions.'" *Bailey v. New York L. Sch.,* No. 19-3473, 2021 WL 5500078, at *4 (2d Cir. Nov. 24, 2021) (quoting *Tolbert*, 242 F.3d at 69), *petition for cert. filed*, (Feb 25, 2022) (No. 21-7208); *see Minto v. Molloy Coll.,* No. 16CV276 (KAM)(AYS), 2021 WL 1394329, at *9 (E.D.N.Y. Jan. 21, 2021) ("To state a claim under Title VI a plaintiff must plausibly allege: (1) that they were discriminated against on the basis of race; (2) that the discrimination was intentional; and (3) that the discrimination was a substantial motivating factor in the defendant's action."), *report and recommendation adopted*, No. 16-CV-276, 2021 WL 804386 (E.D.N.Y. Mar. 3, 2021).   In the context of a school setting:

> [A] school district [may be] liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student. However, [l]iability only arises if a plaintiff establishes: (1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference.  A school district will be subject to liability for third-party conduct only if it exercises substantial control over both the harasser and the context in which the known harassment occurs, and a school district . . . exercises substantial control over the circumstances of the harassment when it occurs during school hours and on school grounds.

*Dayes v. Watertown City Sch. Dist.*, No. 5:20-CV-964 (GLS/ML), 2021 WL 4407385, at *7 (N.D.N.Y. Sept. 27, 2021) (quotations and citations omitted); *D.W.M. by Moore v. St. Mary Sch.*, No. 2:18-CV-3099DRHGRB, 2019 WL 4038410, at *14 (E.D.N.Y. Aug. 27, 2019) ("To plead a deliberate indifference claim under Title VI, the plaintiff must allege

facts demonstrating that the school (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." (citations omitted)).   Generally, "[a] plaintiff alleging racial . . . discrimination by a [school] must do more than recite conclusory assertions," and must "specifically allege the events claimed to constitute intentional discrimination," including the factual circumstances supporting a plausible inference of discrimination.  *Manalov v. Borough of Manhattan Comm. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 712-14 (2d Cir. 1994)).   In order to qualify as deliberate indifference, the conduct "must, at a minimum, cause [the student] to undergo harassment or make [the student] liable or vulnerable to it."  *H.B. and S.B. v. Monroe Woodbury Central Sch. Dist.*, No. 11-CV-5881(CS), 2012 WL 4477552, at *14 (S.D.N.Y. Sept. 27, 2012) (quoting *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 596 (S.D.N.Y. 2011)).   A school district will only be found deliberately indifferent if its actions were clearly unreasonable under the circumstances, but at the same time, "when weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians."  *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012).

Defendants argue that Plaintiffs have not plausibly pled a claim for a violation of Title VI or set forth any viable factual allegations of discrimination on the basis of race.[2] The Court disagrees.

Plaintiffs have adequately alleged that the RCSD and BOE exercised adequate control over the circumstances giving rise to Plaintiffs' allegations, possessed the authority to address the allegations, and had actual notice of the alleged harassment. "A school district, the Supreme Court noted, exercises substantial control over the circumstances of the harassment when it occurs 'during school hours and on school grounds.'" *Id.* at 665 (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646 (1999)). Here, harassment alleged in Plaintiffs' amended complaint purportedly occurred on school grounds and Plaintiffs have sufficiently alleged that the school had control over and was aware of the alleged harassment against Plaintiff DS. In addition, Plaintiffs have now amended their complaint to expressly allege that the alleged harassment faced by Plaintiff DS was discriminatorily race-based and driven by the fact

---

[2]      Defendants also devote a section of their memorandum of law to argue that Plaintiffs' Title VI claims against the individual defendants be dismissed. While the Court agrees that such claims are not permissible against individual parties as was addressed in the D&O, *see Eldars v. State Univ. of New York at Albany*, No. 1:19-CV-0801-GTS-DJS, 2020 WL 2542957, at *8 (N.D.N.Y. May 19, 2020) ("However, 'Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funding.'" (quoting *Goonewardena v. New York,* 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007))); *Russell v. Cnty. of Nassau*, 696 F. Supp. 2d 213, 238 (E.D.N.Y. 2010) ("Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funds."), the amended complaint explicitly indicates that Plaintiffs' Title VI claim is only being asserted against RCSD and BOE. (Dkt. 48 at 49). Accordingly, Defendants' argument is misplaced.

that she is white.[3]  The amended complaint alleges that Plaintiff DS was called names and assaulted with specific reference to and as a result of her race, and not merely related to her political beliefs.  In addition, Plaintiffs have plausibly alleged that the harassment was so severe, pervasive, and objectively offensive that it deprived Plaintiff DS of access to the educational benefits or opportunities provided by the school.  Accordingly, taking the facts in the amended complaint as true, the Court concludes that Plaintiffs have alleged a plausible claim for a violation of Title VI.  Defendants' motion to dismiss this claim is denied.

## B.    Section 1983 Claims

Plaintiffs' claims styled as First Amendment Retaliation (Count Two), Violation of Equal Protection and Due Process (Count Three), and Municipal Failure to Train and Supervise (Count Four) all arise under 42 U.S.C. § 1983.

---

[3]    The amended complaint alters certain factual allegations from those in the original complaint.  For example, in the complaint, Plaintiffs alleged that Plaintiff DS was called names such as "cunt, bitch, whore and pussy," (Dkt. 1 at ¶ 69), whereas the amended complaint alleges that she "was called white racist, white pussy, white bitch, white whore, white hoe, white pussy and white cunt by her Black and Hispanic classmates," (Dkt. 48 at ¶ 59).  While the amendments do not directly contradict the earlier allegations, the failure by Plaintiffs to include the race-related name calling at the outset is unusual. The Court need not resolve any issue raised by the change in allegations at this time, but may address it at a later time, if appropriate.  *Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*, No. 20-CV-851 (KMW), 2021 WL 6065758, at *6 (S.D.N.Y. Dec. 22, 2021) ("When an amended complaint's factual allegations conflict with allegations made in an earlier complaint, courts in this circuit commonly accept the allegations of the amended complaint as true for the purposes of a motion to dismiss, and allow earlier pleadings to be considered at summary judgment or at trial (as controvertible, rather than conclusive, admissions).").

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

"Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983." *Rupp v. City of Buffalo*, No. 17-CV-1209S, 2021 WL 1169182, at *5 (W.D.N.Y. Mar. 29, 2021); *see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (a § 1983 plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution" (quotation and citation omitted)); *Bellinger v. Fludd*, No. 20-CV-2206 (EK)(SIL), 2020 WL 6118823, at *2 (E.D.N.Y. Oct. 16, 2020) ("A plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation." (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010))).

Municipalities cannot be held vicariously liable under § 1983 for the constitutional torts of their employees, nor can they be subject to liability under § 1983 pursuant to a theory of *respondeat superior*. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992); *Canton v. Harris*, 489 U.S. 378, 385 (1989). Instead, where a plaintiff seeks

- 16 -

to impose liability on a municipality, he must allege that the constitutional violation was caused by "action pursuant to official municipal policy." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)).

School districts and boards of education constitute municipal entities subject to claims of liability pursuant to § 1983. *Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-CV-6594 (CJS), 2018 WL 2100605, at *16 (W.D.N.Y. May 7, 2018). But liability only arises under § 1983 if the action is taken pursuant to an official municipal policy, which can be established by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Id.* at *16 (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)); *Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 424-25 (2d Cir. 2004) ("'A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a "final policymaker."'" (citation omitted)); *see also Dole v. Huntington Union Free Sch. Dist.*, 699 F. App'x 85, 87 (2d

- 17 -

Cir. 2017) ("A school district is a municipal entity, and as such, cannot be held liable pursuant to § 1983 solely because of the discriminatory actions of one of its employees" but only "if its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" (quotation and citation omitted)).  Only in limited circumstances can a failure to train "certain employees about their legal duty to avoid violating citizens' rights . . . rise to the level of an official government policy for purposes of § 1983." *RF v. S. Country Cent. Sch. Dist.*, No. 13CV2710 (SJF)(AKT), 2016 WL 5349782, at *11 (E.D.N.Y. Sept. 23, 2016) (quoting *Connick*, 563 U.S. at 61).

Claims against individuals in their official capacity are considered to be a suit against the municipality.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity." (citation omitted); *Adams-Flores v. City of New York,* No. 18-CV-12150 (JMF), 2020 WL 996421, at *4 (S.D.N.Y. Mar. 2, 2020) ("[Plaintiff's] Section 1983 claims brought against the individual Defendants in their official capacities are dismissed as duplicative of the claims against the City." (citing *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 264 n.2 (S.D.N.Y. 2006) ("An official-capacity suit is . . . to be treated as a suit against the entity. . . . Where, as here, the entity also is named as a defendant, the official capacity claims are redundant and are properly dismissed."))); *Phillips v. Cty. of Orange*, 894 F. Supp. 2d 345, 385 n.35 (S.D.N.Y. 2012) ("Within the Second Circuit, where a

plaintiff names both the municipal entity and an official in his or her official capacity,
district courts have consistently dismissed the official capacity claims as redundant.”).
Accordingly, as a threshold matter, Plaintiffs’ § 1983 official capacity claims against the
individual defendants are appropriately dismissed.

> ### 1.     First Amendment Retaliation Claim Against Defendants
> ###         Webster, Resto, and Garlock (Count Two)

Plaintiffs’ First Amendment retaliation claim alleges that Plaintiff CS had the right
to communicate with the school about her concerns regarding Plaintiff DS’s experiences
and to report the instances of bullying and harassment suffered by Plaintiff DS.  Plaintiffs
allege that in retaliation for exercising those rights, Defendants took adverse action
against Plaintiffs including labeling Plaintiffs as racist, interrogating Plaintiff DS which
resulted in the investigation by Child Protective Services, blocking Plaintiff CS from the
school Facebook page, preventing Plaintiff CS from participating in school meetings, and
trying to wrongly retrieve an instrument from Plaintiff CS’s son.  Plaintiffs allege that
Defendants portrayed them as racists to parents and staff in an effort to chill Plaintiffs’
free speech and exclude them from the school.

To state a claim for First Amendment retaliation, a plaintiff must plausibly allege:
(1) an interest protected by the First Amendment; (2) defendants’ conduct or adverse
action was motivated by the exercise of that First Amendment right; and (3) defendants
effectively chilled the exercise of that right or caused some other concrete harm.  *C.T. v.
Valley Stream Union Free Sch. Dist.,* 201 F. Supp. 3d 307, 314 (E.D.N.Y. 2016) (citing

*Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 F. App'x 714, 717 (2d Cir. 2013)); *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (plaintiff has standing to assert a First Amendment retaliation claim where "he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm.   Various non-speech related harms are sufficient to give a plaintiff standing."); *see also Searle v. Red Creek Cent. Sch. Dist.*, No. 21-CV-6086-FPG, 2021 WL 5086405, at *4 (W.D.N.Y. Nov. 2, 2021) ("The elements of a First Amendment retaliation claim are dependent on the factual context of the case.").   "In this context, an adverse action is conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."   *A.S. v. City Sch. Dist. of Albany*, No. 121CV620 (BKS/ATB), 2022 WL 356697, at *14 (N.D.N.Y. Feb. 7, 2022) (quotation and citation omitted)).   A causal connection between the protected interest and adverse action is demonstrated when a plaintiff pleads that "the protected speech was a substantial motivating factor in the adverse action."   *Id.* at *15; *Sutton v. Stony Brook Univ.*, No. 18-CV-7434(JS)(ARL), 2021 WL 3667013, at *10 (E.D.N.Y. Aug. 18, 2021) ("With regard to the causal connection element, to survive a motion to dismiss, a plaintiff must allege facts to show that the adverse action would not have been taken absent the plaintiff's protected speech.").

Consistent with its conclusions in D&O, the Court finds that while not a model of clarity, Plaintiffs' amended complaint has sufficiently pled the elements of such a claim so as to withstand dismissal at this stage of the litigation.   *See Jones v. Bay Shore Union*

*Free Sch. Dist.*, 947 F. Supp. 2d 270, 275 (E.D.N.Y. 2013) (denying motion to dismiss First Amendment retaliation claim where "Plaintiff alleges that Defendants retaliated against him for expressing criticism of the District by prohibiting Plaintiff from entering District property or attending Board meetings, accusing Plaintiff of having engaged in inappropriate conduct while employed with the District approximately twenty years ago, and disproportionately punishing his daughter.").

In the D&O, the Court found the claim was not plausibly alleged because Plaintiffs had not adequately alleged which defendants this claim was asserted against or identified specific conduct sufficient to establish personal involvement for each defendant for purposes of § 1983.  *See A.S.*, 2022 WL 356697, at *16 ("In the context of Plaintiff's First Amendment retaliation claims, the question of the personal involvement of the individual defendants will merge with the question of whether the adverse actions Plaintiff alleges they took plausibly state a retaliation claim.").

The amended complaint appears to now only assert a First Amendment retaliation claim against individual Defendant Webster, Defendant Resto, and Defendant Garlock, and not against the municipalities or remaining individual defendants.  The Court will accordingly address the allegations against each of these defendants.

### a.    Defendant Webster

The facts underlying Plaintiffs' First Amendment retaliation claim against Defendant Webster, the school principal, involve Defendant Webster's decision to no longer allow Plaintiff CS to participate in School Based Planning Meetings, which she

- 21 -

had attended in the past.  (Dkt. 48 at ¶¶ 103, 379k).  Plaintiffs allege that Defendant Webster unexpectedly informed Plaintiff CS that she needed to be "invited" and "cooperative" in order to attend the meetings.  (*Id.* at ¶¶ 104, 379k).  Plaintiffs also allege that Webster was among those who referred Plaintiffs to Monroe County Child Protective Services in retaliation for Plaintiff CS's complaints about the harassment and bullying Plaintiff DS suffered.  (*Id.* at ¶¶ 123, 126).  At this juncture, these allegations are sufficient to establish that Plaintiffs have demonstrated an interest protected by the First Amendment and that Defendant Webster took adverse action in response to the exercise of those First Amendment rights.  Plaintiffs adequately allege that Defendant Webster's actions effectively chilled Plaintiff CS's ability to participate in school meetings and resulted in additional concrete harm arising from the unfounded and retaliatory home visit from Child Protective Services.  Accordingly, Defendants' motion to dismiss this claim as to Defendant Webster is denied.

### b.   Defendant Resto

The allegations against Defendant Resto (Defendant Webster's administrative assistant) include the fact that Defendant Resto was a moderator of the School 58 Facebook page.  (*Id.* at ¶ 379g).  Plaintiffs allege that in a comment on a Facebook page that Plaintiff CS created called "Protect DS," Defendant Resto commented and blamed Plaintiff CS for Plaintiff DS being bullied.  (*Id.*).  Defendant Resto told Plaintiff CS that the "basics" are taught at home and the "problem is rooted" there, and in addition, Defendant Resto divulged Plaintiff DS's confidential academic information.  (*Id.*).

These allegations are insufficient to state a First Amendment retaliation claim. There is no allegation that Defendant Resto in any way infringed or impeded on Plaintiffs' ability to participate on the School 58 Facebook page or otherwise limited Plaintiffs' speech.  That Defendant Resto posted a negative comment about Plaintiff CS on Plaintiff CS's Facebook page may have been unwelcome to Plaintiffs but it does not sufficiently allege that Defendant Resto chilled Plaintiffs' First Amendment rights or ability to continue to express their views there.  In short, there are no allegations that Defendant Resto's actions amount to retaliation.   Accordingly, Defendants' motion to dismiss this claim as to Defendant Resto is granted.

### c.      Defendant Garlock

Defendant Garlock, School 58's Assistant Principal, was the administrator of School 58's Facebook page.  (*Id.* at ¶ 379h).  Defendant Garlock also participated in the conversation with Defendant Resto on Plaintiff CS's Facebook page and later the same day, removed Plaintiff CS from the School 58 Facebook page.  (*Id.*).  Defendant Garlock blocked Plaintiff CS's access to the school Facebook page for several months, which prevented Plaintiffs from learning about school information and activities posted there and from participating in school events of which they were unaware as a result.  (*Id.* at ¶¶ 379h, 379i).

At this stage of the proceedings and taking the allegations as true, the Court finds that Plaintiffs have sufficiently alleged a claim against Defendant Garlock.  To the extent that Plaintiffs had a First Amendment interest in participating on the school social media

- 23 -

page, Plaintiffs have alleged that Defendant Garlock restricted her ability to do so.  They allege that Defendant Garlock took that step as a result of Plaintiffs' complaints about harassment and bullying, and that the restriction had a negative impact on Plaintiffs.  Accordingly, Defendants' motion to dismiss this claim against Defendant Garlock is denied.

### 2.  Equal Protection and Due Process Claim (Count Three)

Plaintiffs' third claim alleges that the actions and inactions of the individual defendants violated Plaintiffs' rights guaranteed by the Fourteenth Amendment.  Specifically, they allege that the individual defendants violated the Equal Protection Clause by treating Plaintiff DS differently than similarly situated African-American and Hispanic classmates.  They also allege a violation of Due Process rights on the ground that Plaintiff DS was suspended twice without following the Code of Conduct regarding notice and opportunity to be heard.

### a.    Equal Protection

"Generally, to maintain an equal protection claim, a plaintiff must 'show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 110 (N.D.N.Y. 2016) (quoting *Miner v. Clinton Cty.*, 541 F.3d 464, 474 (2d Cir. 2008)); *I.S. by & through Disla v. Binghamton City Sch. Dist.*, 486 F. Supp. 3d

575, 605 (N.D.N.Y. 2020) ("To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him [or her] on the basis of his [or her] race."), *reconsideration denied*, No. 19-CV-0513 (GTS/ATB), 2020 WL 6689115 (N.D.N.Y. Nov. 13, 2020); *D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16CV4546 (SJF)(AYS), 2017 WL 3017189, at *6 (E.D.N.Y. July 11, 2017) ("To state a claim for violation of the Fourteenth Amendment's Equal Protection Clause, the plaintiff 'must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender.'" (quoting *Hayden v. Cty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)). "In the alternative, he could pursue an 'equal protection claim under a theory of discriminatory application of the law, or under a theory of discriminatory motivation underlying a facially neutral policy or statute.'" *Rodriguez v. Clinton*, 357 F. App'x 355, 357 (2d Cir. 2009) (quoting *Pyke v. Cuomo*, 258 F.3d 107, 108-09 (2d Cir. 2001)). In the school setting, a violation of the Equal Protection Clause "can either be through direct action or due to deliberate indifference to student-on-student harassment." *Faccio v. Eggleston*, No. 1:10-CV-699, 2011 WL 3666588, at *10 (N.D.N.Y. Aug. 22, 2011); *see also Preston v. Hilton Cent. Sch. Dist.*, 876 F. Supp. 2d 235, 244 (W.D.N.Y. 2012) ("[T]eachers, administrators, and boards of education can be held liable under the Fourteenth Amendment if they have been deliberately indifferent to discriminatory harassment of a student at school by other children.").

For the same reasons that the Court concludes that Plaintiffs have pleaded sufficient allegations to support their Title VI claim, so too, do those allegations generally suffice for an Equal Protection claim. Plaintiffs have adequately alleged that Defendants were deliberately indifferent to the intentional racially discriminatory harassment of Plaintiff DS by other students at the school.

But in addition to challenging the substantive merit of the claim, Defendants also renew their argument that the claim fails for a lack of specificity in pleading arising from Plaintiffs' grouping of all of the individual defendants together without clearly particularizing the allegations tied to each defendant. Indeed, despite being permitted leave to amend to remedy this shortcoming in their original complaint, Plaintiffs' amended complaint continues to do a poor job of specifying conduct by each defendant, which is particularly important where, as here, so many defendants have been named. While as to some defendants, there is sufficient information pled as to the nature of the conduct underlying the claims in a manner that allows a defendant to understand the basis of Plaintiffs' theory of liability against him or her and satisfies the requirements of Rule 8 and Rule 12, *McCardle-Bracelin v. Congress Hotel*, No. 120CV861 (TJM/TWD), 2022 WL 486805, at *7 (N.D.N.Y. Feb. 17, 2022) (holding that "asserting claims against a group of defendants is appropriate if those defendants allegedly acted in concert to violate a Plaintiff's rights" and noting that a "complaint that pleads enough facts to make claims of such wrongdoing plausible need not then describe each defendant's particular

role in detail in order to avoid dismissal on 'group pleading grounds'"), as to others, the amended complaint fails.

As noted, in order to establish liability under an Equal Protection theory, a plaintiff must allege that "the defendant's indifference was such that the defendant intended the discrimination to occur," and in the case of student-on-student harassment, "deliberate indifference can be found when the defendant's response to known discrimination 'is clearly unreasonable in light of the known circumstances.'" *Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 193-94 (D. Conn. 2016) (citation and quotation omitted), *on reconsideration in part*, No. 3: 15-CV-00452 (MPS), 2016 WL 6821061 (D. Conn. Nov. 17, 2016).  Plaintiff has not met this standard with respect to several defendants.

For example, Plaintiffs' allegations that Defendant Resto would not let Plaintiff CS enter a certain door in the building, wrote a negative comment about her parenting on Facebook, and did not let Plaintiff DS call Plaintiff CS, do not amount to plausible allegations of racially discriminatory intent against Plaintiffs or demonstrate a clearly unreasonable deliberate indifference to known discrimination.   For these reasons, Plaintiffs' § 1983 Equal Protection claim against Defendant Resto is dismissed.

Similarly, Plaintiffs fail to plead direct and personal involvement in any constitutional deprivation by Defendant Kristoff, General Counsel for the RCSD, with the requisite plausibility to survive Defendants' motion.  The amended complaint alleges that Defendant Kristoff attended a meeting regarding bullying of Plaintiff DS and

accused Plaintiff CS of having a political agenda, but there are no allegations that any of Defendant Kristoff's actions were related to racial discrimination or deliberate indifference to racial harassment. Other than conclusory allegations, Plaintiffs have not alleged that Defendant Kristoff was directly or personally involved in constitutional deprivations. Defendants' motion to dismiss this claim against Defendant Kristoff is dismissed.

The claim also fails as to Defendant Garlock. The allegations in the amended complaint relating to Defendant Garlock concern her blocking Plaintiff CS's access to the school Facebook page in retaliation for her complaining. There are no allegations that Defendant Garlock's actions related in any way to Plaintiffs' race or constituted deliberate indifference to race-based harassment. For this reason, this claim is dismissed as to Defendant Garlock.

Plaintiffs' allegations against Defendant Boyd are similarly deficient. Defendant Boyd was the parent liaison at School 58, whose duties included "promoting parent involvement in school activities and academic endeavors, providing assistance to parents to enhance their student's success in school and facilitate intercultural understanding and respect in the school and community." (Dkt. 48 at ¶ 266). Plaintiffs allege that Defendant Boyd was copied in on emails from Plaintiff CS about Plaintiff DS's treatment at school, denied Plaintiff CS's request to meet with the parents of one of Plaintiff DS's harassers, and did not permit Plaintiff DS to call home. These allegations against Defendant Boyd do not demonstrate intentional discriminatory conduct, that Defendant

- 28 -

Boyd's indifference rose to the level to establish liability of intentional discrimination, or that Defendant Boyd's actions were clearly unreasonable in light of known circumstances.  For these reasons, Plaintiffs' § 1983 claim against Defendant Boyd is dismissed.

Likewise, Plaintiffs' allegations against Defendant Caveny and Defendant McCoy, teachers at School 58, have not plausibly alleged an Equal Protection claim.  The amended complaint alleges that Defendants Caveny and McCoy made the unfounded CPS referral in retaliation for Plaintiff CS's complaints regarding discrimination but there are no allegations that the actions of these defendants were racially motivated or that they engaged in conduct that would constitute deliberate indifference to harassment. Defendants' motion to dismiss the § 1983 Equal Protection claim against Defendant Caveny and Defendant McCoy is granted.

While some of the factual allegations underpinning this claim against the remaining individual defendants are thin, the Court concludes that taking the allegations as true, the claim survives Defendants' motion to dismiss as to those defendants. Accordingly, Defendants' motion to dismiss Plaintiff's § 1983 Equal Protection claim is granted in part and denied in part.

### b.      Due Process

To state a claim under § 1983 for the denial of procedural due process, a plaintiff must allege both the existence of a protected property or liberty interest, and that he or she was deprived of that interest without being afforded sufficient process.  *A.S,* 2022

WL 356697, at *14 (citing *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d

Cir. 2012)).

This claim apparently arises from two suspensions Plaintiff DS received while at

School 58.   The only allegations in Plaintiffs' 62-page amended complaint relating to

those suspensions allege in a conclusory manner that Plaintiff DS was suspended without

notice or explanation to her mother.   (Dkt. 48 at ¶¶ 312, 333, 388).   Plaintiffs have not

alleged any underlying factual information or identified specifically the elements of this

claim or conduct by Defendants separate and apart from her other claims.   Because

Plaintiffs have not developed this claim in their amended complaint or devoted any

argument to it in their brief opposing its dismissal,[4] the Court presumes Plaintiffs do not

oppose dismissal of this claim.   *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir.

2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a

party's partial opposition that relevant claims or defenses that are not defended have been

abandoned."); *Chen v. Wolf*, No. 19-CV-9951 (AJN), 2020 WL 6825681, at *6 (S.D.N.Y.

Nov. 20, 2020) ("This Court may, and generally will, deem a claim abandoned when a

plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."

---

[4]      The only reference to the claim in Plaintiffs' entire memorandum is at page 2
wherein Plaintiffs state: "The amended complaint also contains valid claims under 42
USC §1983 against the named individual capacity defendants for racial harassment and
bullying of D.S. in violation of Equal Protection of the Fourteenth Amendment, *violation
of the Due Process Clause due to school suspensions without notice* and violation of the
First Amendment for retaliation against protected speech." (Dkt. 54-1 at 2 (emphasis
added)).   But no argument or legal support for the claim is contained anywhere in the
brief.

- 30 -

(quoting *Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004))).

Accordingly, the portion of Count Three alleging a Due Process Claim is dismissed.

### 3.   Municipal Liability for Failure to Train and Supervise (Count Four)

Plaintiffs seek to hold Defendants RCSD and BOE liable for failing to adequately train school employees to prevent, investigate, and report bullying and discrimination, and supervise its employees to ensure compliance with the law.  They contend that Defendants RCSD and BOE failed to comply with DASA, which sets requirements for bullying prevention.

As an initial matter, to the extent this claim continues to appear to allege a cause of action arising from Defendants' alleged failure to comply with DASA, the claim is subject to dismissal, as no private right of action is contemplated by DASA.  *See E. Irondequoit Cent. Sch. Dist.*, 2018 WL 2100605, at \*20 ("[C]ourts in this Circuit have held that there is no private right to sue under DASA."); *Terrill*, 176 F. Supp. 3d at 109 ("Accordingly, for all of these reasons, the Court finds that DASA does not provide a private right of action, either express or implied, and Plaintiffs' third and fourth causes of action must therefore be dismissed.").

But to the extent that the claim arises from a failure to properly train or supervise employees and the DASA violations are merely provided as evidence of the flaws in RCSD and BOE policy, on a motion to dismiss, the Court finds the allegations adequate. "In order for municipal nonfeasance—e.g., the failure to train, to supervise, or to

discipline—to give rise to *Monell* liability, the alleged municipal failure must 'amount[ ]
to deliberate indifference to the rights of [the] person with whom the [municipal
employees] come into contact." *I.S. by & through Disla*, 486 F. Supp. 3d at 603.  Here,
Plaintiffs have alleged that Plaintiff DS was subjected to repeated race-based harassment
by her peers and that school district employees and supervisors were deliberately
indifferent to the harassment and bullying and took no adequate steps to curtail it.  *See
A.S.*, 2022 WL 356697, at *25 (denying motion to dismiss failure to train claim where it
could "be inferred that District policymakers knew school officials would confront
complaints of discrimination and retaliation which it would need to investigate and
resolve, that training would assist school officials in recognizing and resolving such
situations, that improper investigations or handling could violate students' Equal
Protection or First Amendment rights, and that the District failed to adequately train its
employees, like [defendant], who was unfamiliar with how to handle or investigate
Plaintiff's complaints of harassment").  For these reasons, Defendants' motion to dismiss
Plaintiff's *Monell* claim against RCSD and BOE arising from a failure to train is denied.

C.    **State law claim Negligent Supervision/Failure to Keep Safe (Count
      Five)**

Count Five in Plaintiffs' amended complaint alleges that Defendants failed to take
appropriate action and were negligent in protecting Plaintiff DS from abuse, which
caused her injury and suffering.  They allege that due to the numerous incidents that were
reported, all defendants had specific knowledge of the bullying, harassment, and assaults

against Plaintiff DS and knew or should have known that the harassment would continue without intervention.  Indeed, "[s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision." *Motta ex rel. Motta v. Eldred Cent. Sch. Dist.*, 141 A.D.3d 819, 820 (2016) (quoting *Mirand v. City of New York*, 84 N.Y.2d 44, 49 (1994)); *see also PC-41 Doe v. Poly Prep Country Day Sch.*, No. 20CV03628 (DG)(SJB), 2021 WL 4310891, at *12 (E.D.N.Y. Sept. 22, 2021) ("Starting with the duty element, it is well settled that [i]n New York, schools are under a special duty of *in loco parentis*, which obligates them to exercise such care of [their charges] as a parent of ordinary prudence would observe in comparable circumstances." (citations and quotations omitted)).

Plaintiffs have sufficiently pled the elements of such a claim for purposes of a Fed. R. Civ. P. 12(b)(6) motion.  Defendants challenge Plaintiffs' grouping of defendants as they did with the Equal Protection claim, though their arguments attacking this claim are not developed.  While the claim could certainly be more artfully plead, all Defendants are adequately on notice of the nature of the negligence claim being asserted against them and the standard for negligence requires less than that of a constitutional claim.  *Powell v. City of New York*, No. 14CV09937PACBCM, 2016 WL 4159897, at *10 (S.D.N.Y. July 14, 2016) (noting that an equal protection claim "require[s] more than negligence"), *report and recommendation adopted*, No. 14CIV9937PACBCM, 2016 WL 4147203 (S.D.N.Y. Aug. 3, 2016).  Indeed, Defendants seemingly acknowledge as much in their

memorandum of law. (*See* Dkt. 55 at 3 ("At most, plaintiffs' claims suggest that the Individual Defendants were negligent in their supervision of D.S. and her classroom.")). Because Defendants have not adequately developed any argument in this regard, and because the Court otherwise concludes that Count Five has been sufficiently pled, Defendants' motion to dismiss Plaintiffs' negligence claim is denied.

## III.   Rule 11

Finally, in their motion to dismiss, Defendants indicate that they are also moving pursuant to Rule 11, though they devote no separate argument to Rule 11. Rule 11 requires an attorney to certify that (1) a pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b); *see also Hardie v. City of Albany*, No. 118CV470GLSCFH, 2019 WL 5537610, at *3 (N.D.N.Y. Oct. 25, 2019) ("A court has authority to sanction a party under Rule 11(c) if it determines that the party has made false, misleading, improper, or frivolous representations to the court in violation of Rule 11(b).").

A motion brought pursuant to Rule 11 must "be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."

- 34 -

*Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*, No. 12-CV-0642 (DRH)

(AKT), 2014 WL 7338849, at *3 (E.D.N.Y. Dec. 22, 2014) (quoting Fed. R. Civ. P. 11(c)

(2)).   Rule 11 also requires that "the motion must be served on the offending party

twenty-one days before it is filed with the court."  *Rogers v. Henry*, No. 16-CV-05271

(KAM)(VMS), 2017 WL 5495805, at *4 (E.D.N.Y. Sept. 12, 2017) (citing Fed. R. Civ.

P. 11(c)(2)).   "Any motion seeking Rule 11 sanctions that does not comply with these

provisions must be denied."  *Intravaia*, 2014 WL 7338849, at *3.

Here, to the extent Defendants intend to seek Rule 11 sanctions, that portion of the

motion is denied because it was not made separately from their motion to dismiss.  *See*

*Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008) (affirming the district

court's denial of the defendants' Rule 11 motion where the defendants "failed to make a

separate motion for sanctions under Rule 11, and therefore failed to comply with the

procedural requirements of the rule"); *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89-

90 (2d Cir. 1998) (reversing the district court's decision to impose sanctions where the

movant "included its request for sanctions in its letter requesting a Rule 54(b)

certification, thereby failing to give [the non-movant] the separate notice referred to in

Rule 11"); *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 414-15 (S.D.N.Y. 2016)

("[D]efendants' request for attorneys' fees under Rule 11 was made together with the

motion to dismiss rather than as a separate motion, and for that reason alone it must be

denied."); *see also Intravaia*, 2014 WL 7338849, at *6 (stating that "service of a separate

motion for sanctions" is necessary to comply with Rule 11's safe harbor provision (citing

- 35 -

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012))).

In addition, Defendants have failed to demonstrate that they served their motion for sanctions upon Plaintiffs 21 days before filing it. Indeed, a review of the Court's docket reveals that Defendants filed their Rule 11 and Rule 12 motion just three days after Plaintiffs filed their amended complaint. Accordingly, Defendants could not have complied with Rule 11's safe harbor provision. *See Hardie*, 2019 WL 5537610, at *3 ("Further, the motion must first be served upon the offending party, who is then given 21 days to remedy the sanctionable conduct before the motion may be made to the court." (quoting *Finnan v. Ryan*, No. 8:08-CV-259, 2008 WL 4891162, at *7 (N.D.N.Y. Nov. 7, 2008))); *Rogers*, 2017 WL 5495805, at *4 ("Because '[c]ompliance with Rule 11's safe harbor provision is mandatory . . . failure to do so will result in a denial of the sanctions motion.'" (quoting *Libaire v. Kaplan*, No. CIVA. 06-1500, 2008 WL 794973, at *12 (E.D.N.Y. Mar. 24, 2008))); *Castro v. Mitchell*, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) ("A motion that fails to comply with the safe harbor provision of Rule 11 must be denied.").

Therefore, the Court declines to consider Defendants' request for Rule 11 sanctions, because Defendants failed to comply with Rule 11's procedural requirements in moving for sanctions against Plaintiffs. *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 145 (E.D.N.Y. 2014); *Banfield v. UHS Home Attendants, Inc.*, No. 96 CIV. 4850 (JFK), 1997 WL 342422, at *3 (S.D.N.Y. June 23, 1997).

In sum and for the foregoing reasons, Defendants' motion to dismiss is denied in part and granted in part.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.  Plaintiffs' § 1983 claims against the individual defendants in their official capacity are dismissed; the claim for First Amendment retaliation against Defendant Resto is dismissed; the portion of Count Three for Equal Protection violations against Defendants Resto, Kristoff, Garlock, Boyd, Caveny, and McCoy are dismissed; and the portion of Count Three for violations of Due Process are dismissed against all defendants. The portion of Defendants' motion seeking relief pursuant to Rule 11 is denied. Plaintiffs' remaining claims may proceed.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 7, 2022
          Rochester, New York