UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

D.S., an infant, by and through her parent
and natural guardian, C.S., and C.S.,
individually, on her own behalf,

              Plaintiffs,

     v.

ROCHESTER CITY SCHOOL DISTRICT,
et al.,

              Defendants.

**DECISION AND ORDER**

6:19-CV-6528 EAW

---

## <u>INTRODUCTION</u>

Plaintiffs D.S. and C.S. (collectively "Plaintiffs") commenced this action on July 16, 2019, against defendants Rochester City School District ("RCSD"), the Board of Education of the RCSD, and various individual defendants (collectively "Defendants"). (Dkt. 1). With leave of Court, Plaintiffs amended their complaint on February 26, 2021 (Dkt. 48), and again on July 13, 2023 (Dkt. 120). The second amended complaint added two new defendants, Renee Joyner and Nyree Wims-Hall ("Defendant Wims-Hall"). (Dkt. 120).

Pending before the Court is a motion to dismiss Plaintiffs' second amended complaint filed by Defendant Wims-Hall pursuant to Rules 12(b)(2)-(5) of the Federal Rules of Civil Procedure. (Dkt. 127). For the reasons set forth below, the motion is denied.

- 1 -

## FACTUAL BACKGROUND

The factual background of this case is set forth in detail in the Court's November 30, 2020 Decision and Order (Dkt. 38) and March 7, 2022 Decision and Order (Dkt. 56), familiarity with which is assumed for purposes of this Decision and Order.  The Court summarizes the key details below and includes relevant factual additions from the pending motion to dismiss.

Charles Brady ("Brady"), a process server retained by Plaintiffs, completed a proof of service form, which was filed with the Court on August 19, 2023.  (Dkt. 124). In the form, Brady checked a box indicating that he served the summons for Defendant Wims-Hall on J. Huentas on August 14, 2023, an individual designated to accept service on behalf of the RCSD at the RCSD Board of Education office.  (*Id.*).  Additional handwritten information on the bottom of the form reflects that service was attempted on Defendant Wims-Hall at multiple addresses and that on August 18, 2023, the summons was mailed with tracking information to her confirmed home address.  (*Id.*).

In opposition to the pending motion, Brady submitted an affidavit further outlining his attempts to serve Defendant Wims-Hall.  (Dkt. 131).  First, Brady went to an address at 824 Hawks Nest Circle in Rochester, New York.  (*Id.* at ¶ 6).  The woman who answered the door advised Brady that Defendant Wims-Hall did not live there anymore, though she mentioned that she still receives mail addressed to Defendant Wims-Hall at that address.  (*Id.* at ¶ 7).  Brady then found another address online for Defendant Wims-Hall at 310 Exchange Street in Rochester, New York.  (*Id.* at ¶ 9).  On August 10, 2023,

Brady went to 310 Exchange Street, an apartment building, and was unable to gain entry because the outside entry doors were locked. (*Id.* at ¶ 10). Brady returned to 310 Exchange Street on August 13, 2023, and was able to obtain entry into the building from another tenant. (*Id.* at ¶ 13). Brady called Defendant Wims-Hall on the apartment intercom system and a woman answered who identified herself as Defendant Wims-Hall. (*Id.* at ¶ 14). Brady requested that Defendant Wims-Hall come down to the lobby to be served, but Defendant Wims-Hall declined and further advised that Brady could not leave the papers in the lobby for her. (*Id.* at ¶ 15). Thereafter, Brady left a voicemail message for Defendants Wims-Hall with his phone number and requested that she call him back to arrange to meet for service, but his call was not returned. (*Id.* at ¶¶ 16, 17).

Brady then tried to locate Defendant Wims-Hall's place of employment. (*Id.* at ¶ 18). He first contacted Youth and Justice Programs in Rochester, New York, but was advised that Defendant Wims-Hall no longer worked there. (*Id.* at ¶ 19). Brady then went to RCSD Central Offices on August 14, 2023, even though it was summer recess and he recognized that some RCSD employees may not report to work during that time. (*Id.* at ¶¶ 20, 22). There, Brady spoke with security guard Jose Huertas ("Huertas"), incorrectly identified as J. Huentas in the proof service filed with the Court (Dkt. 124), and advised that he had court paperwork for Defendant Wims-Hall. (Dkt. 131 at ¶ 22). Huertas advised Brady that Defendant Wims-Hall did not work in that building and called over his supervisor who was nearby. (*Id.* at ¶ 26). The supervisor confirmed that Defendant Wims-Hall did not work in the Central Offices building but told Brady that

she would receive the papers through inter-agency/office mail, and Brady was shown where to put the documents. (*Id.* at ¶ 29). Brady put the envelope addressed to Defendant Wims-Hall in the mail slot as directed. (*Id.* at ¶¶ 23, 30). Brady also mailed a copy of the summons and amended complaint to Defendant Wims-Hall at the 310 Exchange Street address on August 18, 2023, and obtained proof of delivery from the post office showing delivery the following day. (*Id.* at ¶ 31).

Huertas submitted a declaration concerning his interaction with Brady. (Dkt. 127-5). Huertas states that he is employed by the RCSD in the Office of Safety and Security as a School Sentry. (*Id.* at ¶ 1). He states that he is not permitted to accept legal papers on behalf of the RCSD. (*Id.* at ¶ 3). On August 14, 2023, Huertas buzzed a visitor, now identified as Brady, into the building who advised that he had a delivery for Defendant Wims-Hall. (*Id.* at ¶ 8). At the time, Huertas' supervisor, Daniel Betancourt ("Betancourt") was nearby. (*Id.* at ¶ 9). Huertas told Brady that he was not sure if Defendant Wims-Hall was an employee of the Central Office (*Id.* at ¶ 11), but Betancourt informed Brady that while school principals are not physically present in the Central Offices, he could show Brady how couriers generally deliver this type of package to them at the security desk (*Id.* at ¶ 12). Huertas then observed Brady place the package in the delivery slot. (*Id.* at ¶ 13). Huertas states that at no time did Brady explain what type of paperwork he was delivering or that he was attempting to serve legal papers. (*Id.* at ¶¶ 15, 16). Huertas indicates that the standard procedure to direct all process servers of legal papers to the Law Department. (*Id.* at ¶ 17).

- 4 -

Betancourt also provided a certification in support of Defendant Wims-Hall's motion. (Dkt. 127-7). Betancourt indicates that he is employed by the RCSD as the Supervisor of Safety and Security. (*Id.* at ¶ 1). He is fully familiar with the RCSD policies regarding service of legal papers and he is not permitted to accept any papers on behalf of the District. (*Id.* at ¶ 3). Betancourt was working at the Central Offices on August 14, 2023, when the individual now known to be Brady entered the building. (*Id.* at ¶ 5). Betancourt observed Brady having a conversation with Huertas while holding a large manila envelope. (*Id.* at ¶¶ 7, 8). Brady informed Betancourt that he had a delivery for Defendant Wims-Hall and Betancourt advised him that any materials for employees could be delivered through the internal mail slot where couriers deliver mail or interoffice materials. (*Id.* at ¶ 12). At no time was Betancourt aware that Brady was a process server or attempting to serve legal papers. (*Id.* at ¶ 16). Had Brady informed Betancourt what was in the package, Betancourt would have immediately directed Brady to the Law Department on the second floor of the Central Office. (*Id.* at ¶ 8).

## PROCEDURAL BACKGROUND

Familiarity with the extensive procedural history of this case since the filing of Plaintiffs' complaint on July 16, 2019, is assumed. Relevant here, on December 2, 2022, Plaintiffs moved to amend the complaint a second time to add additional allegations and several new parties. (Dkt. 93). A Report and Recommendation and Decision and Order was issued by United States Magistrate Judge Mark Pedersen on May 11, 2023, recommending denial of Plaintiffs' motion to add certain claims, but granting Plaintiffs'

motion to, among other things, add Defendant Wims-Hall as a party. (Dkt. 113). In the decision, Judge Pedersen directed that Plaintiffs properly serve Defendant Wims-Hall and the other newly added defendant in accordance with Rule 4 of the Federal Rules of Civil Procedure, denying Plaintiffs' request for leave to serve RCSD General Counsel Adrian Neil with the second amended complaint. (*Id.* at 27). On June 30, 2023, the undersigned adopted the Report and Recommendation in its entirety. (Dkt. 119).

On July 13, 2023, Plaintiffs filed their second amended complaint. (Dkt. 120). Summonses were issued by the Clerk on July 14, 2023. (Dkt. 121). Proof of service on Defendant Wims-Hall was filed on August 19, 2023. (Dkt. 124). Defendant Wims-Hall filed a motion to dismiss the complaint on August 31, 2023. (Dkt. 127). Plaintiffs filed their opposition on September 22, 2023. (Dkt. 131).[1]

---

[1]    In opposition to the motion to dismiss, Plaintiffs did not file a memorandum of law, as required by this District's Local Rules. *See* L.R. Civ. P. 7(a)(2) ("Absent leave of Court or as otherwise specified, upon any motion filed pursuant to Fed. R. Civ. P. 12, 56 or 65(a), the moving party shall file and serve a memorandum of law and the opposing party shall file and serve an answering memorandum. Failure to comply with this requirement may constitute grounds for resolving the motion against the non-complying party."). Instead, Plaintiffs filed an affidavit from their process server and a declaration from counsel. The declaration from counsel also violates this Court's Local Rules. Local Rule 7(a)(3) states in pertinent part: "An affidavit, declaration, or affirmation must not contain legal arguments, but must contain factual and procedural background relevant to the motion it supports." The document submitted by Plaintiffs' counsel is improperly comprised of legal argument. Likewise, counsel for Defendant Wims-Hall submitted a declaration with a heading entitled, "Factual Allegations and Legal Argument," (Dkt. 127-1), which is similarly inappropriate. Notwithstanding these deficiencies, the Court has considered the parties' submissions, but reminds them of the importance of adhering to this Court's Local Rules in the future.

## DISCUSSION

Defendant Wims-Hall moves to dismiss Plaintiffs' second amended complaint, arguing that the method of service employed by Plaintiffs was ineffective and contrary to Court directives.  As is evident, aside from the question of whether Brady made Huertas and Betancourt aware of the nature of the documents being delivered, the material facts surrounding Plaintiffs' attempts to serve Defendant Wims-Hall are not disputed by the parties and are largely consistent.  Rather, the question at issue on the instant motion is whether such service was sufficient.

Defendant Wims-Hall argues that because she is being sued in her individual capacity, personal service was required.  (Dkt. 127-4 ("Here, because the Plaintiffs are pursuing claims against Ms. Wims-Hall in her individual capacity, they were required to attempt personal service on her directly, and this attempt to find an alternative does not achieve personal jurisdiction."); *see also* Dkt. 127-1 at ¶ 17 ("As the Court directed, the Plaintiffs were to comply with Fed. R. Civ. P. 4 by personally serving Ms. Wims-Hall.")).  In addition, Defendant Wims-Hall argues that Plaintiffs could not effectuate service by leaving the papers with individuals who did not have authority to accept them and in a location where she could not properly be considered to be employed.  (*Id.* at 1-4).  Finally, she contends that the Court should consider whether a finding of contempt against Plaintiffs is appropriate.  (*Id.* at 4-6).

In response, Plaintiffs argue that they were diligent in effecting service on Defendant Wims-Hall, that Defendant Wims-Hall has not provided an affidavit

contesting any of the pertinent facts, and that any defect in service does not negate Defendant Wims-Hall's actual notice of the lawsuit. (Dkt. 131-1 at ¶¶ 2, 25, 29). Following a review of the legal standards at issue, the Court will address Defendant Wims-Hall's motion.

## I.  Legal Standard on Motions to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4) and 12(b)(5)—Lack of Personal Jurisdiction, Insufficient Process, and Insufficient Service of Process

Under Federal Rule of Civil Procedure 12(b), a defendant may assert the following defenses, among others, by motion: lack of personal jurisdiction; insufficient process; and insufficient service of process. Fed. R. Civ. P. 12(b)(2), (4), (5).

"[A] Rule 12(b)(4) motion is a challenge to the form of the process rather than the manner or method of its service, whereas a Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint." *Coon v. Shea*, No. 2:14-CV-85, 2014 WL 5847720, at *4 (D. Vt. Sept. 5, 2014) (quotation omitted), *report and recommendation adopted in relevant part*, No. 2:14-CV-85, 2014 WL 5849053 (D. Vt. Nov. 12, 2014). "Objections pursuant to Rule 12(b)(2) concern lack of personal jurisdiction, which results when a summons and complaint have not been served on the defendant pursuant to Rule 12(b)(5)." *Jackson v. City of N.Y.*, No. 14-CV-5755 GBD KNF, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (quotation omitted); *Fantozzi v. City of New York*, 343 F.R.D. 19, 25 (S.D.N.Y. 2022) ("While Rules 12(b)(5) and 12(b)(2) are independent bases upon which dismissal may be granted, when service of process is at issue, they are closely interrelated." (internal quotation and citation

omitted)); *Marquez v. Starrett City Assoc.*, 406 F. Supp. 3d 197, 203 (E.D.N.Y. 2017) ("Because failure to comply with the requirements of Rule 4 goes to whether the Court has personal jurisdiction over Defendant, the Court construes this challenge as a motion pursuant to Rules 12(b)(2) and 12(b)(4)."); *see also* C. Wright, A. Miller, & M. Kane, 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.) ("Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him.").

"Objections to sufficiency of process under Fed. R. Civ. P. 12(b)(4) must identify substantive deficiencies in the summons, complaint or accompanying documentation." *DiFillippo v. Special Metals Corp.*, 299 F.R.D. 348, 352-53 (N.D.N.Y. 2014) (quotation and citation omitted). "[A] Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." *Jackson* 2015 WL 4470004, at *4 (quoting Wright & Miller, 5B Fed. Prac. & Proc. § 1353).

By contrast, "[a] Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint." *Id.* (quoting 5B Wright & Miller, Fed. Prac. & Proc. § 1353); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010) ("A defendant may move to dismiss under Rule 12(b)(5) for insufficient service of process. In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons.") (citation omitted)). The plaintiff bears the burden of demonstrating that service was

effective on a Rule 12(b)(5) motion to dismiss. *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quotation omitted), *aff'd*, 626 F. App'x 297 (2d Cir. 2015); *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, No. 1:19-CV-00016 EAW, 2019 WL 1597497, at *6 (W.D.N.Y. Apr. 15, 2019) ("When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." (internal quotations and citations omitted)).   A court may consider matters outside the pleadings to assess the sufficiency of service on a Rule 12(b)(5) motion. *Wilson v. Cuomo*, No. CV214815(GRB)(AYS), 2022 WL 4644695, at *3 (E.D.N.Y. Aug. 28, 2022), *report and recommendation adopted*, 2022 WL 4662825 (E.D.N.Y. Sept. 30, 2022).

## II.   Defendant Wims-Hall's Motion to Dismiss

### A.   Sufficiency of Summons

Although Defendant Wims-Hall's motion is brought pursuant to Rule 12(b)(4), she has not identified any defect in the summons, complaint, or accompanying documentation other than the manner in which it was served on her.   Here, the summons was directed to Defendant Wims-Hall as required by Rule 4.   (Dkt. 121 at 3-4).   There being no technical flaw or deficiency identified by Defendant Wims-Hall, Rule 12(b)(4) is inapplicable. *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 332 n.8 (E.D.N.Y. 2021) ("Defendants erroneously seek dismissal for insufficient service of process under Rule 12(b)(4). . . .   Because this case does not address compliance with Rule 4(b) — the content of the summons or the form of the process — the Court analyzes Defendants'

motion to dismiss for insufficient service of process under Rule 12(b)(5) only.");
*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112, 2018
WL 4757939, at *3 (S.D.N.Y. Sept. 30, 2018) ("Although [defendant] has challenged
service under both Rules 12(b)(4) and 12(b)(5) . . . , his arguments do not identify
substantive deficiencies in the summons, complaint, or accompanying documentation;
thus, [his] motion is governed by Rule 12(b)(5)."). Accordingly, Defendant Wims-Hall's
motion pursuant to Rule 12(b)(4) is denied.

### B.    Sufficiency of Service of Process

As noted, the crux of Defendant Wims-Hall's motion relates to the sufficiency of
service of process upon her. As an initial matter, the Court disagrees with Defendant
Wims-Hall that personal service was required. In their motion to amend the complaint,
Plaintiffs proposed that they be permitted to serve RCSD General Counsel with the
amended complaint in lieu of serving the new defendants at their home or work. (Dkt.
93-1 at 6). Defendants objected (Dkt. 101), and in the Report and Recommendation,
Judge Pedersen denied Plaintiffs' request and directed that "Plaintiffs are required to
serve the newly-added Defendants in compliance with Fed. R. Civ. P. 4." (Dkt. 113 at
27). The Court finds that they have done so. *See Pinela Jurado v. Sabor Hispano, Inc.*,
No. 20CIV1104(RPK)(VMS), 2021 WL 11690645, at *3 (E.D.N.Y. Aug. 5, 2021) ("[A]
plaintiff may elect to pursue service pursuant to Section 308(2) without showing an
inability to achieve personal service pursuant to Section 308(1).").

Pursuant to Fed. R. Civ. P. 4(e), Plaintiffs could effectuate service by any of the following means:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Service of process in New York is governed by section 308 of the Civil Practice Law and Rules ("CPLR"). Under this statute, service can be made by delivering the summons on the person to be served, CPLR 308(1), or pursuant to CPLR 308(2), service can be made "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business[.]" CPLR 308(2). The statute defines "actual place of business" as including "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business." CPLR 308(6). "In

- 12 -

New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, [it is] presume[d] that [defendant] was properly served with the complaint." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

"New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business." *Maldonado v. Arcadia Bus. Corp*., No. 14CV4129DLIRML, 2015 WL 12791329, at *2 (E.D.N.Y. Aug. 27, 2015) (quoting *Warshun v. New York Cmty. Bancorp., Inc.*, 957 F. Supp. 2d 259, 266 (E.D.N.Y. 2013)); *see also Leung v. New York Univ*., No. 08-CV-05150 (GBD), 2016 WL 1084141, at *6 (S.D.N.Y. Mar. 17, 2016) (noting that "the phrase 'actual place of business' is not necessarily synonymous with being 'physically present with regularity.'  Indeed, '[n]o definitive test has emerged as to the meaning of actual place of business.'" (quoting *Ascencio-Sutphen v. McDonald's Corp*., 16 Misc. 3d 184, 187 (Sup. Ct. Bronx Cnty. 2007))).  "The key requirement is a reasonable reliance on prompt redelivery of the summons to the defendant." *Maldonado*, 2015 WL 12791329, at *2 (citing *Ascencio-Sutphen*, 16 Misc. 3d at 188); *Leung*, 2016 WL 1084141, at *5 ("Personal service by way of delivery to a suitable person at a defendant's actual place of business is allowed because it is presumed that the business relationship between the deliveree and the

defendant will induce the prompt redelivery of the summons to the defendant." (quoting *Glasser v. Keller*, 149 Misc. 2d 875, 878-79 (Sup. Ct. Queens Cnty. 1991))).

The New York statute also directs that the summons be left with an individual of "suitable age and discretion." CPLR 308(2).  To be of suitable age and discretion, the "person 'must objectively be of sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant.'"  *Maldonado,* 2015 WL 12791329, at *2 (quoting *Entm't by J&J, Inc. v. Las Hermanas Rest., Inc.*, No. 02 CV 1119, 2006 WL 3711565, at *2 (S.D.N.Y. Dec. 14, 2006)).  "An adult co-worker can satisfy these requirements; it makes no difference if the individual refuses to give his name or gives a false one."  *Id.*; *Leung* 2016 WL 1084141, at *8 (rejecting argument that service was invalid because recipient was not authorized to accept service on defendant's behalf because "[a]uthorization, however, is not required. All that is required is that the person to whom service is made be of 'suitable age and discretion.'" (quoting *City of New York v. VJHC Dev. Corp.*, 125 A.D.3d 425, 425 (1st Dep't 2015))).

To the extent that Defendant Wims-Hall argues that Plaintiff was not permitted to serve her by leaving the summons and complaint with Huertas and Betancourt because they were not expressly authorized to accept service, this is not required by CPLR 308(2). Rather, CPLR 308(2) merely requires that the summons be delivered to "a person of suitable age and discretion at the actual place of business," and here, there is no allegation that Huertas and Betancourt did not satisfy that requirement.  *See Nevelskiy v.*

- 14 -

*Advanced Pro. Grp., Inc.*, No. 23-CV-2364 (KAM) (JAM), 2024 WL 2745190, at *7 (E.D.N.Y. May 29, 2024) ("All that is required of service under Section 308(2) is that process be served on a person of suitable age and discretion at the actual place of business 'regardless of whether or not that person is an employee or is otherwise officially authorized to accept service on behalf of the defendant.'" (quoting *Nat'l Cas. Co. v. Runway Towing Corp.*, No. 19-CV-5091 (DG) (CLP), 2021 WL 5310857, at *2-3 (E.D.N.Y. Oct. 19, 2021))).

A closer question is presented by whether or not the RCSD Central Offices could be considered an "actual place of business" for Defendant Wims-Hall when she physically worked in a different school building. On the facts presented here, the Court concludes that the Central Offices were an acceptable location for service on Defendant Wims-Hall. In particular, the existence of the RCSD general mailbox at the Central Office location coupled with the information provided to Brady by both Huertas and Betancourt that the mail slot was an effective manner of delivering packages to RCSD employees, as well as the fact that the service occurred during the school summer break, is persuasive. The envelope containing the documents included Defendant Wims-Hall's name and it is undisputed Brady followed the directives from Huertas and Betancourt, making it reasonable to conclude that prompt delivery would be successful. *See Leung*, 2016 WL 1084141, at *7 ("Whether the plaintiff's process server could have reasonably relied on the person to whom delivery was made to redeliver the summons and complaint to the defendant is particularly relevant."). Notably, Defendant Wims-Hall has not

submitted an affidavit denying that this location was appropriate or that she did not receive service by this method. *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) ("A defendant's affidavit denying service 'rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing,' only where the defendant 'swear[s] to specific facts to rebut the statements in the process server's affidavits.'" (quoting *Old Republic*, 301 F.3d at 58)).

Finally, Defendant Wims-Hall contends that by opting to deliver the summons to her place of business, Brady was obligated to follow up by mailing the summons to her place of business, rather than to her residence. (Dkt. 127-4 ("Even were the Plaintiffs attempting service at Ms. Wims-Hall's place of business, the follow up mailing was to her place of residence, which also fails to comply with the plain language of CPLR § 308.")). But the plain language of the statute expressly states otherwise. CPLR 308(2) provides that service is complete by leaving a summons with a person of suitable age and discretion "and by *either* mailing the summons to the person to be served at his or her last known residence *or* by mailing the summons by first class mail to the person to be served at his or her actual place of business." (emphasis added); *see also Mulligan Funding, LLC v. Tommy Interior Contracting Corp.*, No. 23-CV-8808, 2024 WL 2124695, at *6 (E.D.N.Y. May 13, 2024) ("New York state law permits service to be made by 'delivering the summons . . . to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by either mailing the summons . . . to the person to be served at his or her actual place of business' or to the person's last known

- 16 -

residence." (quoting CPLR 308(2))); *Lester Korinman Kamran & Masini, P.C. v. Davis*, 227 A.D.3d 906, 906 (2d Dep't 2024) ("Service of process under CPLR 308(2), which is at issue here, requires that the summons be delivered within the state to a person of suitable age and discretion at the defendant's actual place of business, dwelling place or usual place of abode, along with a mailing of the summons to the defendant's last known residence or actual place of business." (internal quotation marks omitted)); *Sackett v. Dirlam*, No. 6:22-CV-6245 EAW, 2023 WL 4206520, at *6 (W.D.N.Y. June 26, 2023) ("In addition, as noted, the statute [CPLR 308(2)] provides that in addition to delivering the summons to a person of suitable age and discretion at the actual place of business, a party must also mail it to the last known address or actual place of business."). Defendant Wims-Hall cites no persuasive authority for her argument otherwise.[2]

Finally, to the extent that Defendant Wims-Hall invites the Court to make a finding of contempt against Plaintiffs, it declines to do so. To be sure, Brady could have been more thorough and accurate with the information provided in his proof of service[3]

---

[2] Although Defendant Wims-Hall contends that the case of *Strong v. Bd. of Ed. of Uniondale Union Free Sch. Dist.*, No. CV-90-2373, 1991 WL 37053, at *2 (E.D.N.Y. Mar. 13, 1991), is analogous, the Court disagrees. In *Strong*, the plaintiff failed to mail the summons to *any* location. *Id.* *Strong* does not stand for the proposition that service is ineffective where a summons is delivered to a place of business and then mailed to a residence, as here.

[3] The document filed by Brady includes some inconsistent dates (*e.g.*, the document appears to have been signed by Brady prior to its completion according to the information contained at the bottom showing service by mail several days after the signature date) and does not make clear that the service was effected pursuant to CPLR 308(2) versus Rule 4

- 17 -

and Plaintiffs could have avoided any question as to the effectiveness of service by attempting service at the school where Defendant Wims-Hall worked.  Indeed, all parties have demonstrated a concerning lack of attention to detail in this case.  But for the foregoing reasons, the Court finds that Plaintiffs sufficiently effectuated service of process on Defendant Wims-Hall in a manner that did not violate Court directives and no showing of contempt has otherwise been demonstrated.  Defendant Wims-Hall's motion to dismiss pursuant to Rule 12(b)(2) and 12(b)(5) is accordingly denied.

## **CONCLUSION**

For the foregoing reasons, Defendant Wims-Hall's motion to dismiss (Dkt. 127) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 24, 2024
          Rochester, New York

---

of the Federal Rules, which may have caused confusion.  Ultimately, these flaws are not material and do not affect the Court's ultimate conclusion as to the sufficiency of service.