UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DS, an infant, by and through her parent
and natural guardian, CS, and CS,
individually, on her own behalf,

                     Plaintiffs,

        v.

ROCHESTER CITY SCHOOL DISTRICT,
et al.,

                     Defendants.

_____

**DECISION AND ORDER**

6:19-CV-6528 EAW

## INTRODUCTION

Plaintiff DS ("Plaintiff DS") and Plaintiff CS ("Plaintiff CS") (collectively "Plaintiffs") commenced this action against Defendants Rochester City School District ("RCSD"), the Board of Education of the RCSD ("BOE"), Barbara Deane-Williams, Fatimat Reid, Sheelarani Webster, Charles Smith, Kim Garlock, Amy Martin, Jessica Flanders, Megan Carlett, Valerie Torregrossa, Yolanda Asamoah-Wade, Idonia Owens, Erica Deming, Renee Joyner, and Nyree Wims-Hall, alleging federal claims pursuant to Title VI and 42 U.S.C. § 1983 and a New York state-law claim for negligent supervision, arising from incidents at Plaintiff DS's elementary school.  (Dkt. 120).

Pending before the Court is a motion for summary judgment filed by Valerie Torregrossa ("Torregrossa") (Dkt. 215), a motion for summary judgment filed by Defendants RCSD, BOE, Barbara Deane-Williams, Fatimat Reid, Sheelarani Webster,

- 1 -

Charles Smith, Kim Garlock, Amy Martin, Jessica Flanders, Megan Carlett, Yolanda Asamoah-Wade, Idonia Owens, Erica Deming, Renee Joyner, and Nyree Wims-Hall (*i.e.*, all defendants except Valerie Torregrossa) (collectively "RCSD Defendants") (Dkt. 216), a motion to seal filed by RCSD Defendants (Dkt. 223), and a motion allowing service of expert disclosures nunc pro tunc filed by Plaintiffs (Dkt. 235).[1]

For the reasons set forth below, Defendant Torregrossa's motion for summary judgment is granted, RCSD Defendants' motion to seal is granted in part and denied in part, RCSD Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiffs' motion allowing service of expert disclosures is referred to United States Magistrate Judge Mark W. Pedersen for resolution. (*See* Dkt. 14 (magistrate judge referral order)).

## FACTUAL BACKGROUND

The following undisputed facts are taken from Torregrossa's Rule 56 Statement of Undisputed Facts (Dkt. 215-19), Plaintiffs' Response to Torregrossa's Statement of Undisputed Facts (Dkt. 229-1), RCSD Defendants' Statement of Material Facts (Dkt. 216-2), Plaintiffs' Response to RCSD Defendants' Statement of Material Facts (Dkt. 229), and the declarations and exhibits submitted by the parties. Factual disputes are plentiful.

---

[1]    In their papers, Plaintiffs suggest that they are entitled to summary judgment pursuant to Fed. R. Civ. P. 56(f)(1). (Dkt. 229-2 at ¶ 43). However, they did not file a motion seeking that relief, nor have they established their entitlement to it on the papers before the Court.

As a threshold matter, the Court notes the inadequate approach by Plaintiffs when responding to RCSD Defendants' statement of facts. For example, at the outset of their response, Plaintiffs note that they "object to all of RCSD's statements of material fact because RCSD did not file any redacted exhibits with its summary judgment motion to support its factual claims as required by FRCP 56(c)(1)(A) and Local Rule Civ. P. 56.1(a)(1)." (Dkt. 229 at 1). The Court has already resolved this contention because not only is it factually inaccurate—RCSD Defendants <u>did</u> provide all of the documents supporting their motion to the Court and to Plaintiffs' counsel on the same day the motion was filed—but the Court has already expressly rejected this as a basis for Plaintiffs to oppose the summary judgment motion. (*See* Dkt. 222). Plaintiffs continuing to raise the same argument borders on sanctionable conduct. Further, while Plaintiffs did ultimately respond to the numbered paragraphs, their "objection" to almost every single one of the facts identified by RCSD Defendants violates the Local Rule requirement that a non-movant either admit or specifically controvert the accuracy of the statement (*see* Local Rule 56(a)(2) ("Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by correspondingly numbered paragraphs in such opposing statement with citation to admissible evidence or to evidence that can be presented in admissible form at trial as required by Fed. R. Civ. P. 56(c)(1)(A)")), and undermines the overall usefulness

- 3 -

of these documents, which are designed to aid the Court in narrowing the factual disputes before it.[2] The Court now turns to the facts that are undisputed.

RCSD is a public school district in the city of Rochester, New York, and it operates School 58. (Dkt. 215-19 at ¶¶ 1, 2; Dkt. 229-1 at ¶¶ 1, 2). The BOE directs and oversees the operations of the RCSD. (Dkt. 229-1 at ¶ 2). Plaintiff DS was a student in the RCSD beginning in 2016. (Dkt. 215-19 at ¶ 3; Dkt. 229-1 at ¶ 3; Dkt. 229 at ¶ 5).

Plaintiff DS attended School 58 from third grade through eighth grade. (Dkt. 215-19 at ¶ 20; Dkt. 229-1 at ¶ 20). Beginning in third grade, Plaintiff DS, who is white, was labeled by her classmates, who were predominantly African-American and Hispanic, as racist. (Dkt. 215-19 at ¶ 24; Dkt. 229-1 at ¶¶ 1, 24). Her classmates continued to label her as racist through eighth grade. (Dkt. 215-19 at ¶ 24; Dkt. 229-1 at ¶ 24). Plaintiff disputes RCSD Defendants' contention that she used racist language in class and contends that the African-American and Hispanic students in her class made false allegations about her use of racist language to bully Plaintiff DS and force her to leave School 58. (Dkt. 216-2 at ¶ 29; Dkt. 229 at ¶ 29). Statements from Plaintiff DS's classmates regarding the use of her language were collected, but Plaintiff DS contends that the statements were fabricated. (Dkt. 216-2 at ¶¶ 31, 32; Dkt. 229 at ¶¶ 31, 32). Plaintiffs also contend that Plaintiff DS faced repeated race-based bullying and assault by

---

[2]     The Court acknowledges that Plaintiffs may possess legitimate grounds to object to the inclusion of certain facts and also recognizes that for many of the facts, Plaintiffs did go on to respond without waiving the objection. That said, their objection to each of RCSD Defendants' statements of material fact is not what is contemplated by the Local Rule.

her classmates, which was not addressed by RCSD or was exacerbated by its response to these incidents, but the facts supporting those allegations are disputed by Defendants. (*See, e.g.*, Dkt. 229 at ¶¶ 29, 30, 34, 43, 108, 118, 119).

Torregrossa was employed by the Center for Youth as a Crisis Intervention/Prevention Specialist during the 2018-2019 school year. (Dkt. 215-19 at ¶ 4; Dkt. 229-1 at ¶ 4). The Center for Youth entered into an "Agreement for Professional Services" with RCSD. (Dkt. 215-19 at ¶ 7; Dkt. 229-1 at ¶ 7). Pursuant to the agreement, the Center for Youth was to provide RCSD with a structured approach to teach students social and emotional skills through the Alternative to Suspension program and the Help Zone. (Dkt. 215-19 at ¶ 9; Dkt. 229-1 at ¶ 9). The Help Zone was defined as a program "designed to provide a structural approach that teaches social/emotional skills and strategies through matched intervention/prevention to develop appropriate positive behaviors and foster school engagement that assist in keeping students in school, while addressing the challenges our young people face." (Dkt. 215-19 at ¶ 12; Dkt. 229-1 at ¶ 12). Torregrossa worked in the Help Zone at School 58. (Dkt. 215-19 at ¶ 6; Dkt. 229-1 at ¶ 6). Plaintiff DS attended the Help Zone while a student at School 58, visiting approximately 148 times during the 2018-2019 school year. (Dkt. 215-19 at ¶¶ 11, 25; Dkt. 229-1 at ¶¶ 11, 25).

Plaintiff DS was suspended for violence against other students between 2019 and 2021. (Dkt. 216-2 at ¶ 43; Dkt. 229 at ¶ 43). Plaintiffs contend that the suspensions were improper and not in accordance with the requirements of New York Education Law

§ 3214. (Dkt. 229 at ¶ 43). Plaintiff attended the Charles Finney School after she left School 58 but was expelled from Charles Finney School for disciplinary reasons. (Dkt. 216-2 at ¶ 46; Dkt. 229 at ¶ 46). Plaintiff DS also engaged in gang activity and made other poor choices after she left School 58. (Dkt. 216-2 at ¶¶ 58, 66; Dkt. 229 at ¶¶ 58, 66). She attributes that conduct as foreseeable consequences of the bullying and harassment she suffered at School 58. (Dkt. 229 at ¶ 58).

Plaintiffs assert claims against RCSD and BOE for violations of Title VI, 42 U.S.C. § 2000d (Count One) and municipal liability for failure to train and supervise pursuant to 42 U.S.C. § 1983 (Count Four). They bring claims pursuant to 42 U.S.C. § 1983 for First Amendment retaliation (Count Two) against Defendant Webster, Defendant Garlock, and Defendant Joyner, violation of Equal Protection and Due Process (Count Three) against all individual defendants, and a state-law claim for negligent supervision/failure to keep safe against all Defendants (Count Five). Plaintiffs seek compensatory and punitive damages, attorneys' fees, costs, and interest as damages.

## PROCEDURAL BACKGROUND

Plaintiffs filed their complaint on July 16, 2019. (Dkt. 1). RCSD Defendants filed a motion to dismiss the complaint on September 9, 2019. (Dkt. 4). Plaintiffs filed a motion to amend their complaint on September 3, 2020. (Dkt. 29). On November 30, 2020, the Court granted RCSD Defendants' motion to dismiss in part and granted Plaintiffs leave to amend. (Dkt. 38).

- 6 -

On February 26, 2021, Plaintiffs filed their amended complaint.  (Dkt. 48). Torregrossa filed an answer (Dkt. 49) and RCSD Defendants filed a motion to dismiss the amended complaint (Dkt. 51), which the Court granted in part and denied in part on March 7, 2022 (Dkt. 56).  RCSD Defendants filed their answer on March 16, 2022.  (Dkt. 57).

On December 12, 2022, Plaintiffs filed a second motion to amend/correct their complaint.  (Dkt. 93).  On May 11, 2023, Judge Pedersen issued a report and recommendation that the motion be denied in part and granted in part.  (Dkt. 113).  The Court adopted the report and recommendation in full on June 30, 2023 (Dkt. 119), and on July 13, 2023, Plaintiffs filed their second amended complaint (Dkt. 120).

The parties engaged in extensive discovery and on March 14, 2025, Torregrossa and the RCSD Defendants filed motions for summary judgment.  (Dkt. 192; Dkt. 193). Plaintiffs objected that the motions were filed prematurely in light of ongoing discovery matters, but the Court found Plaintiffs' objection unfounded because the operative Scheduling Order in the case (Dkt. 185) set a March 14, 2025 deadline for dispositive motions and all discovery deadlines had passed.  But because the motions for summary judgment included identifying information of the minor Plaintiff, the Court restricted public access to the motions and directed Defendants to re-file them, which they did. (Dkt. 197; Dkt. 198).  The re-filed motions remained deficient and the Court denied them without prejudice to renew, requiring Defendants to seek leave for an extension of the dispositive motion deadline before refiling any renewed summary judgment motions.

(Dkt. 200).  The Court also directed "any party seeking to extend the discovery deadlines that have since passed should promptly address that issue with Magistrate Judge Pedersen." (*Id.*).

Defendants promptly filed motions for extension of time to re-file their dispositive motions (Dkt. 201; Dkt. 203), and Plaintiffs cross-moved for a hearing, extension of discovery deadlines, and asking the Court to admonish defense counsel (Dkt. 205).  On May 19, 2025, the Court granted Defendants' motions for extension of time to file dispositive motions, and denied Plaintiffs' motion for hearing, extension of discovery deadlines, and to admonish counsel in its entirety except to the extent that an extension of time to respond to the anticipated summary judgment motions was sought by Plaintiffs. (Dkt. 212).

On June 2, 2025, Torregrossa and RCSD Defendants re-filed their summary judgment motions.  (Dkt. 215; Dkt. 216).  On July 18, 2025, Plaintiff filed a motion asking the Court to deny the motion for summary judgment filed by RCSD Defendants for their alleged failure to comply with this Court's directives related to sealed filings and also sought sanctions.  (Dkt. 219).  On July 24, 2025, the Court issued a Text Order finding that to the extent that Plaintiffs argue that RCSD Defendants' motion for summary judgment should have been accompanied by a motion to seal, the Court agreed, but in all other respects, Plaintiffs' motion was denied.  (Dkt. 222).

On July 29, 2025, RCSD Defendants filed their motion to seal.  (Dkt. 223).  On July 31, 2025, the Court granted Plaintiffs' extension of time to file their response to the

summary judgment motions (Dkt. 228), which they filed on August 6, 2025 (Dkt. 229). On August 12, 2025, RCSD Defendants filed a reply to their motion for summary judgment. (Dkt. 230). On August 19, 2025, Plaintiffs filed their opposition to RCSD Defendants' motion to seal. (Dkt. 232). On August 20, 2025, RCSD Defendants filed a reply to their motion to seal (Dkt. 233), and Torregrossa filed her reply to her motion for summary judgment (Dkt. 234).

On September 8, 2025, Plaintiffs filed a motion allowing service of Plaintiffs' expert disclosure nunc pro tunc to the deadline in the Scheduling Order. (Dkt. 235). On September 15, 2025, RCSD Defendants filed their opposition (Dkt. 237), and on September 30, 2025, Torregrossa filed hers (Dkt. 238). On October 7, 2025, Plaintiffs filed their reply. (Dkt. 239).

## DISCUSSION

### I.     RCSD Defendants' Motion to Seal

"In deciding whether to seal or unseal filed materials, a court properly conducts a three-step inquiry: 'First, the court determines whether the record at issue is a judicial document—a document to which the presumption of public access attaches. Second, if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document. Third, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document and balance those factors against the weight properly accorded the presumption of access.'" *Giuffre v. Maxwell*, 146 F.4th 165, 175 (2d Cir. 2025) (quoting

*Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 69-70 (2d Cir. 2023)).  To overcome the presumption of public access to judicial documents, the Court must make "specific, on-the-record findings that sealing is necessary to preserve higher values" and any sealing order must be "narrowly tailored to achieve that aim."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006).  The burden is on the proponent of sealing to overcome the presumption of public access to judicial documents.  *United States v. Buff*, No. 23-1070-CV, 2024 WL 4262956, at *3 (2d Cir. Sept. 23, 2024).

Documents submitted in connection with a motion for summary judgment are judicial records to which a strong presumption of access applies.  *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) ("Conversely, where documents directly affect an adjudication, . . . or are used to determine litigants' substantive legal rights, the presumption of access is at its zenith, . . . and thus can be overcome only by extraordinary circumstances." (citation modified)); *McDay v. Eckert*, No. 1:20-CV-233-JLS-JJM, 2025 WL 2115475, at *1 (W.D.N.Y. July 29, 2025) ("[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." (quoting *Lugosch*, 435 F.3d at 121)); *Knight v. MTA-New York City Transit*, No. 19-CV-1428 (PKC) (LB), 2024 WL 4350417, at *27 (E.D.N.Y. Sept. 30, 2024) ("Documents submitted for consideration with summary judgment motions are considered, as a matter of law, 'judicial documents to which a strong presumption of access attaches.'" (quoting *Mark v. Gawker Media LLC*, No. 13-CV-4347 (AJN), 2015 WL 7288641, at *1 (S.D.N.Y. Nov. 16, 2015))).

RCSD Defendants move to seal a number of exhibits filed in support of their motion for summary judgment that they contend contain sensitive information relating to minors, including the identity of Plaintiff DS, names and identifying information of minor witnesses, police records and investigative findings that may be related to sealed convictions, protected medical records, and CPS records related to abuse allegations. RCSD Defendants acknowledge that the exhibits are judicial documents and that there is a strong presumption of public access, but argue that sealing is appropriate in light of the privacy interests at stake.  Plaintiffs oppose the motion to seal, largely re-arguing their contention that the motion to seal should have been filed contemporaneously with the filing of the summary judgment motion and that the manner of RCSD Defendants' filing caused delay and prejudice to Plaintiffs in responding to the summary judgment motions. Plaintiffs also argue that the documents should be redacted rather than sealed in full.

As noted above, the Court's July 24, 2025 Text Order agreed with Plaintiffs "[t]o the extent that Plaintiffs argue that RCSD Defendants' motion for summary judgment should have been accompanied by a motion to seal," and directed RCSD Defendants to file a motion to seal and accompanying memorandum of law for any documents they contend are subject to sealing in accordance with Local Rule 5.3(c) on or before July 31, 2025.  (Dkt. 222).  They have done so.  Thus, Plaintiff's contention that this failure should foreclose RCSD Defendants from pursuing a sealing motion is feckless.

As to the merits, the Court finds that RCSD Defendants have met their burden to overcome the presumption of public access with respect to the information contained

- 11 -

within the documents they propose to file under seal but concludes that wholesale sealing of the exhibits is not narrowly tailored to achieve that aim.  Rather, narrow redactions which are carved out to maintain under seal the identity of Plaintiff DS, the names and identifying information of all minor witnesses, identifying information contained in police records and investigative findings that may be related to sealed convictions, protected medical records, and CPS records, are more appropriate.

Accordingly, RCSD Defendants' motion to seal is granted in part and denied in part.  RCSD Defendants may redact the confidential information contained in the summary judgment exhibits but the proposed wholesale sealing is not permissible.  Thus, on or before April 6, 2026, RCSD Defendants must submit to the Court with a copy to Plaintiffs' counsel the proposed redacted filing in electronic format.  The Court will review the proposed redacted filing to ensure compliance with the Court's directives pursuant to this Decision and Order.  Upon confirmation that RCSD Defendants have complied, the Court will direct RCSD Defendants to publicly file the redacted version of the filings, and then it will arrange for the filing of the unredacted versions of these documents under seal.

## II.    Legal Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in

the light most favorable to the nonmoving party, it finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### III.    Torregrossa's Motion for Summary Judgment

Plaintiffs' only claim asserted against Torregrossa is a New York state-law claim for negligent supervision.

"To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Crout v. Haverfield Int'l, Inc.*, 269 F. Supp. 3d 90, 96 (W.D.N.Y. 2017) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)).  Here, the gravamen of Plaintiffs' negligence claim against Torregrossa arises from their contention that Torregrossa, an employee of Center for Youth Services who worked at School 58 pursuant to a contract with RCSD, owed a duty of care to Plaintiff DS to ensure that she and other students were adequately supervised and that she breached that duty by not protecting Plaintiff DS from bullying and harassment.

In the school context, "[s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision." *Motta ex rel. Motta v. Eldred Cent. Sch. Dist.*, 141 A.D.3d 819, 820 (3d Dep't 2016) (quoting *Mirand v. City of New York*, 84 N.Y.2d 44, 49 (1994)); *A.R. v. Bay Shore Union Free Sch. Dist.*, 219 A.D.3d 850, 850-51 (2d Dep't 2023) ("Schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision. . . .  A school district owes a duty to its students to

- 14 -

exercise the same degree of care as would a parent of ordinary prudence under similar circumstances." (quotations and citations omitted)).

The duty owed by the school to the students is one of *in loco parentis*. *See PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 2d 551, 568 (E.D.N.Y. 2021) ("Starting with the duty element, it is well settled that [i]n New York, schools are under a special duty of *in loco parentis*, which obligates them to exercise such care of [their charges] as a parent of ordinary prudence would observe in comparable circumstances." (citations and quotations omitted)). "The duty arises from the school's physical custody over the students." *R.L. v. New York City Dep't of Educ.*, 175 A.D.3d 477, 478 (2d Dep't 2019) ("The rationale underlying this duty is that when a school takes custody of a child, it deprives the child of the protection of his or her parents or guardian, and thus must give the child the protection of which the child has been deprived." (quoting *Begley v. City of New York*, 111 A.D.3d 5, 23 (2d Dep't 2013)). As explained by the court in *R.L.*:

> The school's duty is thus coextensive with and concomitant to its physical custody of and control over the child. When that custody ceases because the child has passed out of the orbit of its authority in such a way that the parent is perfectly free to reassume control over the child's protection, the school's custodial duty also ceases.

*Id.* (quoting *Pratt v. Robinson*, 39 N.Y.2d 554, 560 (1976)). For example, where a school contracts out the student's physical custody to another entity, the school's duty of care will cease. *Ferraro v. N. Babylon Union Free Sch. Dist.*, 69 A.D.3d 559, 560, (2d Dep't 2010) ("Here, the district discharged its duty to provide the infant plaintiff special education services by arranging for him to attend a program provided by

- 15 -

BOCES. Since the infant plaintiff passed outside the district's orbit of authority while attending the BOCES program, the Supreme Court properly granted that branch of the district's motion which was for summary judgment dismissing so much of the complaint as alleged negligent supervision against it."); *see also Lynch v. Roman Cath. Diocese of Brooklyn,* No. 23-CV-4800 (NRM) (LKE), 2026 WL 621957, at *8 (E.D.N.Y. Mar. 5, 2026) ("The New York Court of Appeals has specifically noted 'the general rule that a school's duty of care does not extend beyond school premises, and is limited to injury that occurred shortly after school hours upon the student's departure from the school.'" (quoting *Williams v. Weatherstone*, 23 N.Y.3d 384, 401 (2014) (citation modified))).

Torregrossa relies on *Begley*, 111 A.D.3d at 16, in support of her motion for summary judgment. In *Begley*, the defendant was a registered nurse who was hired to provide a student with nursing services, including the administration of nebulizer treatments, during a student's school day. In assessing whether the nurse could be held liable on a negligent supervision claim, the court noted that while the nurse "was charged with the responsibility of accompanying [the student plaintiff] to school to monitor his medical condition and administer medications, he was not in her general physical custody during the school day," but rather, was in the custody of the school "during school hours, and it was the duty of the school's teachers and personnel to provide him with adequate supervision in the absence of his parents." *Id*. at 15-16. As a result, the court concluded that "the scope of [the defendant's] duties as a nurse did not extend to providing [the student] with adequate supervision by ensuring that [the school] provided him with a

- 16 -

reasonably safe environment," and as a result granted summary judgment to the nurse on this claim. *Id.* at 16.

Here, it is undisputed that Torregrossa was not an employee of the RCSD and was not under a contractual duty to take custody of any children at School 58. As such, she argues and the Court agrees that she did not have custody over Plaintiff DS in a manner that would impose a duty to supervise so as to sustain a negligent supervision claim pursuant to New York law. While Plaintiffs conclusorily argue that Torregrossa had a common law duty to keep Plaintiff DS safe because of her obligation to work at the school and her knowledge of the RCSD Code of Conduct, they cite no caselaw that would support imposing liability against her and instead cite cases that discuss the duty of a school and school employees to supervise students. As noted, *Begley* distinguishes the duty owed by the school from that owed by a non-employee third party on school grounds, and Plaintiffs provide no legal support to depart from *Begley*'s reasoning on these facts.

Accordingly, because Plaintiffs have identified no legal basis to support a duty of care owed by Torregrossa to Plaintiff DS on their negligent supervision claim, Torregrossa is entitled to summary judgment on this claim.[3]

---

[3]    Because the lack of a duty of care is dispositive on Plaintiffs' ability to assert a negligent supervision claim against Torregrossa, the Court need not resolve Torregrossa's alternative arguments supporting her motion for summary judgment.

## IV.    RCSD Defendants' Motion for Summary Judgment[4]

RCSD Defendants move for summary judgment on all of Plaintiffs' claims.  The Court addresses their arguments below.

### A.    Plaintiffs' Title VI Claims against RCSD and BOE[5]

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  In addition to a prohibition of intentional discrimination on the basis of race, color, or national origin, *see Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001), Title VI also prohibits, in certain circumstances, "the deliberate indifference of third parties to discrimination," *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 355 (S.D.N.Y. 2014).

---

[4]    Plaintiffs' continued repetition of their argument that RCSD Defendants' summary judgment motion should be denied because RCSD Defendants did not provide their proposed sealed exhibits with their motion papers or accompany the summary judgment motion with a motion to seal is wholly without merit.  As noted, RCSD Defendants did provide the proposed sealed documents at the same time that their motion for summary judgment was filed.  The Court received the documents by email and Plaintiffs' counsel was included on the same email.  Any basis for Plaintiffs to continue to claim that they were not provided with the proposed sealed filings is unfounded, and the Court should not have to continuously revisit matters that it has already resolved.

[5]    Although in their papers RCSD reference a Title IX claim having been asserted by Plaintiffs, no such claim is asserted in the second amended complaint, nor do Plaintiffs make any arguments on the pending motions that any bullying Plaintiff DS suffered was gender-based.  Accordingly, the Court need not address the merits of such a claim in this Decision and Order.

"To state a claim under Title VI, a plaintiff must allege that 'the defendant discriminated against him on the basis of race, that that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions.'" *Bailey v. New York L. Sch.,* No. 19-3473, 2021 WL 5500078, at *4 (2d Cir. Nov. 24, 2021) (quoting *Tolbert*, 242 F.3d at 69). In the context of a school setting:

> [A] school district [may be] liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student. However, [l]iability only arises if a plaintiff establishes: (1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference. A school district will be subject to liability for third-party conduct only if it exercises substantial control over both the harasser and the context in which the known harassment occurs, and a school district . . . exercises substantial control over the circumstances of the harassment when it occurs during school hours and on school grounds.

*Dayes v. Watertown City Sch. Dist.*, No. 5:20-CV-964 (GLS/ML), 2021 WL 4407385, at *7 (N.D.N.Y. Sept. 27, 2021) (quotations and citations omitted). In order to qualify as deliberate indifference, the conduct "must, at a minimum, cause [the student] to undergo harassment or make [the student] liable or vulnerable to it." *H.B. and S.B. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881(CS), 2012 WL 4477552, at *14 (S.D.N.Y. Sept. 27, 2012) (quoting *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 596 (S.D.N.Y. 2011)). A school district will only be found deliberately indifferent if its actions were clearly unreasonable under the circumstances, but at the same time, "when weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012). "A school district . . . exercises substantial control over the

- 19 -

circumstances of the harassment when it occurs 'during school hours and on school grounds.'" *T.E.*, 58 F. Supp. 3d at 356 (quoting *Zeno*, 702 F.3d at 665). "Whether a particular employee of the defendant had the requisite authority to take action on the defendant's behalf to correct a particular form of discrimination is a fact-specific inquiry." *Ellis v. Univ. of Rochester*, No. 19-CV-6380 CJS, 2024 WL 493504, at *28 (W.D.N.Y. Feb. 8, 2024).

On the record before the Court, genuine issues of material fact exist as to whether a reasonable jury could find the harassment Plaintiff DS suffered to be "severe, pervasive, and objectively offensive," and went beyond the non-actionable "simple acts of teasing and name-calling among school children." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650-52 (1999). The sworn declarations from Plaintiff DS and Plaintiff CS contain facts supporting a claim that Plaintiff DS faced repeated race-based discrimination or harassment by teachers, administrators, or other students under their control on school grounds. In addition, Plaintiff DS alleges more than verbal harassment and contends that she also suffered physical assaults, and maintains that the bullying and harassment on the basis of race continued over several years, which deprived her of a scholastic environment free from harassment. Both Plaintiffs declare that RCSD and BOE were on notice of the discrimination and harassment and that they had the requisite authority to take corrective action to end the discrimination but did not do so. Further, Plaintiffs' declarations indicate that the RCSD

Defendants' deliberate indifference put Plaintiff DS in danger of experiencing additional discrimination of the same type, which they contend was the exact result of their inaction.

To be sure, RCSD and BOE offer evidence that they were not deliberately indifferent to Plaintiff DS's safety and for example, placed Plaintiff DS in a two-teacher classroom for additional support, offered her transfer to alternative schools, devised a safety plan with additional support for Plaintiff DS, provided a personal escort, offered psychological counseling, conducted investigations into Plaintiffs' allegations, and held meetings between Plaintiff CS and school leadership to develop a behavior and safety plan for Plaintiff DS.  But Plaintiffs counter that RCSD and BOE responses were not sufficient, effective, or reasonable under the circumstances.  Plaintiffs' sworn declarations create genuine issues of material fact as to the reasonableness of Defendants' actions.

Further, RCSD Defendants' position that Plaintiff DS was "a troublemaker and a liar" and that Plaintiff CS "failed in her duty" as a parent (Dkt. 216-9 at 15), such that the Court can disregard their declarations, are not matters that the Court can resolve on the instant motion for summary judgment because they require resolution of credibility and factual disputes.  *Johnson v. Geraci*, No. 22 CV 4450 (VB), 2026 WL 457043, at \*4 (S.D.N.Y. Feb. 18, 2026) ("Although [defendant] argues plaintiff's version of events is not credible, '[c]redibility determinations . . . are jury functions, not those of a judge.'" (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545-46 (2d Cir. 2010))); *Thompson v. City of New York*, No. 22-CV-1458 (JPO), 2025 WL 919435, at \*5 (S.D.N.Y. Mar. 26,

- 21 -

2025) ("Thus, while contradictions between Thompson's DOC interviews and his later testimony might affect his credibility before a jury, they are not a sufficient basis for summary judgment."); *Ruggiero v. Cnty. of Orange*, No. 20-CV-7693 (AEK), 2023 WL 7005074, at *10 (S.D.N.Y. Oct. 24, 2023) ("At the summary judgment stage a district court 'should not weigh evidence or assess the credibility of witnesses.'" (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996))).

For these reasons, RCSD Defendants' motion for summary judgment on Plaintiffs' Title VI claim is denied.

### B.    Section 1983 Claims

Plaintiffs' claims styled as First Amendment retaliation (Count Two), violation of Equal Protection and Due Process (Count Three), and municipal failure to train and supervise (Count Four) all arise under 42 U.S.C. § 1983.

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "To 'establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . .

- 22 -

the defendant's personal involvement in the alleged constitutional deprivation.'" *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)).

Municipalities cannot be held vicariously liable under § 1983 for the constitutional torts of their employees, nor can they be subject to liability under § 1983 pursuant to a theory of *respondeat superior*. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992). Instead, when a plaintiff seeks to impose liability on a municipality, he must allege that the constitutional violation was caused by "action pursuant to official municipal policy." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)).[6]

Aside from citing the standard for § 1983 claims and the requirement for personal involvement,[7] Plaintiffs offer <u>no</u> argument in opposition to RCSD Defendants' motion for summary judgment on any of their § 1983 claims. Nowhere in their opposition memorandum of law do Plaintiffs even mention the words First Amendment, Equal

---

[6]     School districts and boards of education constitute municipal entities subject to claims of liability pursuant to § 1983. *Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-CV-6594 (CJS), 2018 WL 2100605, at *16 (W.D.N.Y. May 7, 2018). But liability only arises under § 1983 if the action is taken pursuant to an official municipal policy. *Id.* at *16 (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

[7]     Plaintiffs' entire discussion of the standard § 1983 claims is lifted from the Court's prior Decision and Order in this case. (*See* Dkt. 56 at 16).

- 23 -

Protection, Due Process, or a municipal failure to train and supervise.[8]  The caselaw is clear that a counseled party's failure to address claims that are the subject of a motion for summary judgment can constitute abandonment of the claims.  Here, Plaintiffs opted to provide argument about certain claims while omitting any argument about others.  On these facts, the Court finds these claims abandoned and summary judgment to RCSD Defendants on Plaintiffs' § 1983 claims is warranted.  *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) ("Where, as here, a counseled non-moving party submits 'a partial response arguing that summary judgment should be denied as to some claims while not mentioning others,' that response 'may be deemed an abandonment of the unmentioned claims.  Even '[w]here abandonment by a counseled party is not explicit,' a court may infer abandonment 'from the papers and circumstances viewed as a whole.'" (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 195-96 (2d Cir. 2014))); *Jackson*, 766 F.3d at 195 ("a partial response arguing that summary judgment should be denied as to some claims while not mentioning others, . . . may be deemed an abandonment of the unmentioned claims"); *Wood v. Maguire Auto.*, LLC, 508 F. App'x 65, 66 (2d Cir. 2013) (concluding that argument was waived where it appeared "in only one sentence" of the brief and accordingly was "inadequately argued and thus waived"); *Scarpellino v. Freeman*, No. 3:22-CV-1130 (VAB), 2026 WL 326816, at *13 (D. Conn. Feb. 7, 2026) ("At summary

---

[8]    Although the memorandum of law is the appropriate place for such a discussion, the Court further notes that none of these terms were discussed in Plaintiffs' counsel's declaration (Dkt. 229-2), Plaintiff CS's declaration (Dkt. 229-3), or Plaintiff DS's declaration (Dkt. 229-4).

judgment, claims may be deemed abandoned where a plaintiff expressly disclaims opposition to particular theories or fails to develop defendant-specific argument in response to a properly supported motion."); *Chipkin v. Better Packages, Inc.*, No. 3:24-CV-1435 (SVN), 2025 WL 2319994, at *3 (D. Conn. Aug. 12, 2025) ("Where the abandoning party is represented by counsel and filed a partial opposition to the dispositive motion, dismissal is appropriate.").

Alternatively, even if not intended to be abandoned, RCSD established its entitled to summary judgment on these claims and Plaintiffs' wholesale failure to come forward with any evidence to rebut RCSD's motion for summary judgment justifies the award of summary judgment. *Patrizio v. Nelson*, No. 14CV7497JBWVMS, 2016 WL 3582047, at *5 (E.D.N.Y. June 28, 2016) ("The non-moving party must demonstrate a genuine dispute with more than 'conclusory allegations, speculation or conjecture.' *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). If the non-movant fails to come forward with such evidence, summary judgment is granted."). It is not the obligation of the Court to scour the record and conduct legal research on Plaintiffs' behalf to assess whether Plaintiffs' claims can survive summary judgment, particularly given the large number of defendants in the case, the sheer volume of documents submitted in connection with these motions, and Plaintiffs' complete failure to come forward with any legal basis to sustain their claims. For these reasons, the Court finds that RCSD Defendants are entitled to summary judgment on Plaintiffs' claims arising under § 1983.

### C.    New York law claim for Negligent Supervision/Failure to Keep Safe

Finally, Plaintiffs assert that all Defendants violated their duty to supervise Plaintiff DS and keep her safe from bullying and harassment. As noted above, schools owe a duty to the students in their custody to provide adequate supervision. *AA by BB v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 507 (W.D.N.Y. 2021) ("With respect to plaintiff's negligent supervision claim, it is well settled that under New York law, [s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision. . . . The attendant duty of care has been described as that of a 'reasonably prudent parent,' and as such, school personnel cannot reasonably be expected to guard against all of the sudden, spontaneous acts that take place among students daily . . . absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act." (citations and quotations omitted)).

RCSD Defendants move for summary judgment on the grounds that this claim is completely unsubstantiated, arguing that many of the allegations of bullying and harassment lack credibility and factual support in the record. (Dkt. 216-9 at 20). Although Plaintiffs submit extensive argument in their memorandum of law as to why summary judgment on this claim is not warranted as to Torregrossa (Dkt. 229-6 at 1-7), they wholly omit any argument with respect to any of the other individual defendants. For the same reasons that the Court concludes that summary judgment is warranted on Plaintiffs' § 1983 claims, so too does the Court conclude that summary judgment is

- 26 -

warranted on this claim as to the individual defendants as a result of Plaintiffs' abandonment of the claims and/or failure to identify any basis to oppose summary judgment with respect to these defendants.  As with the § 1983 claims, it is not the Court's obligation to comb the record to determine whether Plaintiffs have established whether genuine issues of material fact exist as to the liability of each individual defendant for a negligent supervision claim and Plaintiffs' failure to even mention the individual defendants' liability in their memorandum of law warrants summary judgment on this claim for each of the individual defendants.  *Wade v. Kay Jewelers, Inc.*, No. 3:17-CV-990 (MPS), 2019 WL 1385089, at *11 (D. Conn. Mar. 27, 2019) ("Although granting summary judgment is rare in a negligence case, it is nonetheless appropriate where the non-movant fails to put forward any evidence to rebut the movant's showing.").

A closer question is presented as to the RCSD and BOE.  As explained above, the Court concludes that issues of fact preclude summary judgment on Plaintiffs' Title VI claim as to the liability of RCSD and BOE for deliberate indifference to the bullying and harassment Plaintiff DS contends that she faced on the basis of her race and the same facts support a negligent supervision claim against these defendants.  And while not specifically addressed to a negligent supervision claim against RCSD or BOE, Plaintiffs' papers do at least contain argument about the liability of these defendants on these same facts.  As noted, Plaintiffs have provided sworn declarations that outline the basis for their contention that RCSD and the BOE failed to take appropriate action and were

- 27 -

negligent in protecting Plaintiff DS from abuse, which caused her foreseeable injury and suffering. They allege that because of the numerous incidents reported, that RCSD and BOE had specific knowledge of the bullying, harassment, and assaults against Plaintiff DS and knew or should have known that the harassment would continue without intervention. Taking these facts in the light most favorable to Plaintiffs, the Court concludes that RCSD and BOE are not entitled to summary judgment on this claim.

Accordingly, for all of the foregoing reasons, RCSD Defendants' motion for summary judgment is granted in part and denied in part.

## V.      Plaintiffs' Motion to Allow Service of Expert Report

Plaintiffs also move to permit service of the expert report of Amanda Nickerson, Ph.D., NCSP. Dr. Nickerson prepared a report opining on the connection between the alleged bullying and isolation that Plaintiff DS experienced and the subsequent social-emotional problems she suffered and the delinquent behavior she engaged in. (Dkt. 235-12). Although the operative Scheduling Order in the case set a deadline of October 31, 2024, for the parties to exchange expert reports and January 10, 2025, for expert discovery to close, Plaintiffs request that the Court consider Dr. Nickerson's report, served on April 24, 2025, as timely filed. (Dkt. 185). Defendants oppose the motion and urge the Court to preclude Plaintiffs from relying on Dr. Nickerson's report.

"Where a party has failed to comply with a court-imposed deadline for expert disclosures and then seeks to avoid preclusion, courts consider (1) the reason for the non-compliance, (2) the importance of the witness to be precluded, (3) prejudice to the

- 28 -

opposing party, and (4) any potential for continuance." *OnActuate Consulting, Inc. v. Aeon Nexus Corp.*, No. 120CV508(AMN/CFH), 2023 WL 5835845, at *1 (N.D.N.Y. Sept. 8, 2023) (quoting *Scharrer v. United States*, 13-CV-1156S(F), 2016 WL 3457933, at *2 (W.D.N.Y. June 30, 2015)).

The Court initially believed it would resolve the pending motion on its own, but having reviewed the papers and considered the issues, it concludes that having Judge Pedersen resolve the motion is more appropriate. Judge Pedersen has been supervising discovery in this case for over six years, and he is much more familiar with the history. After all, it is his deadline that was not met by Plaintiffs. Accordingly, the Court refers the pending motion to allow service of the untimely expert discovery to Judge Pedersen for resolution.

## CONCLUSION

For the foregoing reasons, Defendant Torregrossa's motion for summary judgment (Dkt. 215) is granted, RCSD's motion to seal (Dkt. 223) is granted in part and denied in part, RCSD's motion for summary judgment (Dkt. 216) is granted in part and denied in part, and Plaintiffs' motion allowing service of expert disclosures (Dkt. 235) is referred to Judge Pedersen for resolution. The Clerk is directed to terminate Barbara Deane-Williams, Fatimat Reid, Sheelarani Webster, Charles Smith, Kim Garlock, Amy Martin,

Jessica Flanders, Megan Carlett, Valerie Torregrossa, Yolanda Asamoah-Wade, Idonia Owens, Erica Deming, Renee Joyner, and Nyree Wims-Hall as defendants.[9]

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 24, 2026
Rochester, New York

---

[9] The Court notes that individuals formerly named as defendants who have been dismissed by the Court or were not named in Plaintiffs' second amended complaint should also be terminated as defendants, to wit: Karl Kristoff, Nancy Resto, Shelly Boyd, Elizabeth Caveny, and Nicole McCoy.